**Darrell McKNIGHT and Michael Palmer, Appellants,**

v.

**AMERICAN MERCURY INSURANCE COMPANY, Appellee.**

No. 06–08–00004–CV.

Court of Appeals of Texas, Texarkana.

Submitted May 19, 2008.

Decided Sept. 24, 2008.

Robert D. Bennett, Robert D. Bennett & Associates, PC, Gilmer, TX, for Appellants.

Bradley R. Echols, Boon, Shaver, Echols & Coleman, PLLC, Longview, TX, for Appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

OPINION

Opinion by Justice CARTER.

Darrell McKnight and Michael Palmer made a claim with their insurer, American Mercury Insurance Company (American Mercury), seeking payment for damage to their metal building resulting from a hailstorm in March of 2000. Initially, American Mercury issued a check to pay for the damage assessed. When McKnight and Palmer, dissatisfied with the amount paid, refused to accept the check and, instead, filed suit in Upshur County (Upshur County litigation), American Mercury reinvestigated the claim. Upon its reinvestigation, American Mercury discovered that the damage, if there ever was any, had been cured by natural processes. So, during the Upshur County litigation, American Mercury maintained its position that it owed nothing to McKnight and Palmer because there was no remaining discernible damage to the building.

Several years later and following a trial to an Upshur County jury, the trial court entered judgment that McKnight and Palmer take nothing. McKnight and Palmer then tried to deposit the check that American Mercury had initially issued several years earlier. Not surprisingly, American Mercury refused to honor that check. McKnight and Palmer then sued again, this time in Gregg County[1] (Gregg County litigation). American Mercury moved for summary judgment on the ground that the doctrine of res judicata barred the Gregg County litigation. The trial court agreed and granted summary judgment that McKnight and Palmer take nothing. They now appeal that judgment to this Court. We first discuss the details and factual allegations of both suits.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Upshur County Litigation

Again, before either suit was filed, American Mercury tendered a check in the amount of $24,055.70.[2] McKnight and Palmer disagreed with the amount of the check and filed suit in Upshur County seeking damages. *See McKnight v. Am. Mercury Ins. Co.*, cause number 401–02. In their petition, filed in June 2002, McKnight and Palmer described the case as one "involving, breach of contract, violation of the Texas Deceptive Trade Practices Act, and violations of the Texas Insurance Code." They alleged that American Mercury "failed to provide full coverage for certain damage" and that, as a result, they "herein [sue] for payment of all property damage covered under the terms of this policy of insurance."

Attached to American Mercury's designation of expert witnesses, filed February 24, 2005, are three reports important to the analysis of the Upshur County litigation: (1) a report dated November 10, 2003, following a reinspection by the claims service that originally inspected the building, (2) a follow-up report dated November 12, 2003, summarizing the November 10 report's findings, and (3) an engi-

---

1. This second suit was originally filed in Upshur County as well under cause number 690–06. American Mercury moved to transfer venue based on the fact that the property at issue was actually located in Gregg County, a fact that McKnight and Palmer later conceded. Although the order is not included in the our record, the parties refer to an agreed order by which the cause was indeed trans-ferred to Gregg County under cause number 2007-612-A.

2. Although the date of the check is not clear from the record before us, we note that the estimate upon which American Mercury issued the check was completed on August 12, 2000.

neering firm's report dated February 14, 2005. The November 10 reinspection report included the findings following an examination of the structure:

Our inspection of the building found no damage to the exterior metal walls related to hail. We also gained access to the roof and verified that no damage to this metal structure was found. We did find areas where hail had left marks on the roof, however no dents, dings, or impressions from hail were found. As you can tell in our photographs, there are areas where hail appears to have struck the roof and left marks on the chalking or acid build up on the roof. As you can tell in our photographs, these areas are easily wiped away and have not reduced the life expectancy of this roof. These marking[s] are sometimes misconstrued as being hail damage. The chalking or acidation of this roof is due to weather and can be found on all metal structures. Once again, we found no evidence of hail damage to the exterior walls or the roof of this building.

The follow-up report explained that the original inspection in 2000 did show hail damage and concluded that it was "possible that due to heat and severe weather conditions in East Texas that these dings are no longer visible." The report continued, suggesting that the previously visible dings "may have potential [sic] cured themselves through time and weather." It plainly stated that "there is no visible damage evident during our recent inspection."

The engineering firm's report detailed the property's characteristics and outlined the process by which it investigated the building and the claim of hail damage. First, the report noted that the company maintains a national database of hailstone reports in excess of ¾ inch using government records. Using this database, the firm concluded that there was no hail reported within a three-mile radius of the building on March 29, 2000, the date McKnight and Palmer allege as the date of the damaging storm. In fact, according to the database, no hail was reported within a three-mile radius of the building in the years 2000, 2001, and 2003. Going further, the report noted that no hail was reported within a six-mile radius on the date at issue. The firm conceded that the lack of reports does not necessarily "mean that hail did not fall in a particular location."

On ground level, the firm reported "no evidence of hail impact, spatter marks, or dents in the metal siding." Regarding the roof, the report noted that some hail spatter marks had removed the surface grime of the metal roof, but there were "no observable dents associated with the spatter marks" and the impact had not removed the paint coating. The firm reported no evidence of hail damage to the trim or other features of the metal building. The firm discussed in detail its findings, confirmed the structural integrity of the building, and noted as well that even the visible spatter marks that had removed the surface grime on the roof had probably been sustained in the most recent hailstorm since "[s]patter marks fade over time, usually six months to a year." So, the firm, too, observed no damage to the metal building. Even the spatter marks, which here, the report suggests, were cosmetic, temporary blemishes, were not likely the result of the hailstorm McKnight and Palmer allege happened in March 2000. Again, these three reports were filed along with American Mercury's designation of expert witnesses on February 24, 2005.

Additionally, on January 31, 2006, American Mercury responded with the following in its supplemental response to a request for disclosure:

Defendant American Mercury Insurance Company denies the allegations of the

Plaintiffs' petition. The Plaintiffs have failed to state any specific violation of the Texas Insurance Code or Deceptive Trade Practices Act which Plaintiffs allege have been violated by Defendant, so Defendant cannot respond specifically other than to state that Defendant denies it committed any violation. Defendant adjusted the claim and sent a check based on its adjustment of the claim that was refused by Plaintiffs. Defendant's position is that the original adjustor either misadjusted the extent of the damage or that any damage to the roof was "repaired" by physical processes described by Defendant's expert Robert Fleishmann. Defendant further alleges that Plaintiff Michael Palmer is not a proper party to this cause of action. Plaintiffs have failed to comply with the conditions of the insurance policy in question in bringing this cause of action. Plaintiffs have no damages because the building in question was sold to Dr. Jody Syring in an arm's length transaction. Dr. Syring was not told of and was not aware of any damage to the building as alleged by Plaintiffs.

American Mercury relied on the reinspection and engineering reports.

On April 13, 2006, the Upshur County jury answered the following question in the negative: "Did American Mercury Insurance Company fail to comply with the insurance agreement?"[3] The trial court signed a take-nothing judgment on June 5, 2006.

### B. Gregg County Litigation

After the Upshur County litigation, McKnight and Palmer attempted to deposit the check issued several years earlier, only to discover that American Mercury refused payment on the check. As explained, during the course of the Upshur County litigation American Mercury maintained that further investigation revealed that there was no hail damage to the property and, thus, nothing owed on the claim.

In their petition filed on March 15, 2007,[4] in the Gregg County litigation, McKnight and Palmer alleged that American Mercury breached the insurance contract by refusing to honor the check issued years earlier on the claim prior to the Upshur County litigation. They also alleged that American Mercury's refusal breached its duty of good faith and fair dealing. They sought to recover the amount of the check ($24,055.70) and exemplary damages.

McKnight and Palmer now take the position that the Upshur County suit is distinguishable from the Gregg County suit because, in Upshur County, the two claimed that American Mercury breached the insurance agreement by paying an insufficient amount on the claim whereas, in Gregg County, the two claimed that American Mercury breached the insurance agreement by refusing to honor the check initially issued on the claim. In other words, McKnight and Palmer contend that they seek different damages in this case than they did in the Upshur County suit. American Mercury, of course, disagrees with this characterization and successfully argued to the trial court its position that the Gregg County litigation was barred by the doctrine of res judicata.

## II. APPLICABLE LAW: DOCTRINE OF RES JUDICATA

 Essentially, the doctrine of res

---

**3.** As instructed, the jury did not answer any of the other five questions subsequent to its negative answer to this question.

**4.** McKnight and Palmer originally filed their petition in Upshur County on October 2, 2006. Following the previously-noted transfer, the petition was filed in Gregg County on March 15, 2007.

judicata, or claim preclusion,[5] gives a plaintiff one bite at the cause of action apple. *Weiman v. Addicks–Fairbanks Road Sand Co.*, 846 S.W.2d 414, 418 (Tex.App.–Houston [14th Dist.] 1992, writ denied). If the defendant wins the original suit, then, the plaintiff is barred from bringing another action on the claims actually litigated in the action, as well as on claims that could have been litigated in the original action. *See Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992); *Fiallos v. Pagan–Lewis Motors, Inc.*, 147 S.W.3d 578, 584 (Tex.App.–Corpus Christi 2004, pet. denied); *Dresser Indus., Inc. v. Underwriters at Lloyd's, London*, 106 S.W.3d 767, 770 (Tex.App.–Texarkana 2003, pet. denied). Thus, a party may not pursue a claim determined by the final judgment of a court of competent jurisdiction in a prior suit as a ground of recovery in a later suit against the same parties. *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex.2008); *Tex. Water Rights Comm'n v. Crow Iron Works*, 582 S.W.2d 768, 771–72 (Tex.1979). In short, res judicata precludes parties from relitigating claims that have been finally adjudicated by a competent tribunal. *Igal*, 250 S.W.3d at 86; *Barr*, 837 S.W.2d at 628.

■ To successfully assert the affirmative defense of res judicata, a defendant must prove the following well-established elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *See Igal*, 250 S.W.3d at 86; *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex.2007); *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996); *Crow Iron Works*, 582 S.W.2d at 771–72; *Cherokee Water Co. v. Freeman*, 145 S.W.3d 809, 812–13 (Tex.App.–Texarkana 2004, pet. denied).

Here, McKnight and Palmer challenge only the third element, contending that the Gregg County litigation involves different claims than those advanced in the Upshur County litigation. Since the case comes to us in summary judgment posture and since res judicata is an affirmative defense on which the defendant bears the burden of proof, we will review the record to determine whether American Mercury conclusively proved as a matter of law that the claims in the Gregg County litigation were barred by the doctrine of res judicata. *See* TEX.R. CIV. P. 166a(c); *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex.2001).

## III. DISCUSSION

■ McKnight and Palmer's claims that American Mercury breached the insurance agreement or its duty of good faith and fair dealing by refusing payment on McKnight and Palmer's insurance claim are claims that have been determined in the Upshur County litigation. The record

---

**5.** Although American Mercury's motion for summary judgment and the briefs to this Court limit their discussion to res judicata generally, we note the distinctions between the related doctrines of res judicata, also referred to as claim preclusion and of collateral estoppel, also known as issue preclusion. Collateral estoppel, or issue preclusion, is more narrow than res judicata in that it only precludes the relitigation of identical issues of facts or law that were actually litigated and essential to the judgment in a prior suit. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex.1985). Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties. *See id.; Wilhite v. Adams*, 640 S.W.2d 875, 876 (Tex.1982). Thus, unlike the broader res judicata doctrine, collateral estoppel analysis does not focus on what could have been litigated, but only on what was actually litigated and essential to the judgment. *Van Dyke*, 697 S.W.2d at 384.

shows us that, as early as November 2003, American Mercury had taken the position that there was no damage to the building and, therefore, it owed nothing on the claim. At the very latest, McKnight and Palmer learned of this position in February 2005 when American Mercury filed its designation of expert witnesses in which it explained that the designated experts' testimony would reflect "no evidence of a hailstorm in 2000 having produced any current hail damage to the building." American Mercury again made its position clear in its supplemental response to a request for disclosure, plainly stating its position "that the original adjustor either misadjusted the extent of the damage or that any damage to the roof was 'repaired' by physical processes described [in the attached expert's report]."

So, by the time trial was held in April 2006, it was clear that American Mercury maintained its position that it owed nothing on the claim. Included in the evidence put before the Upshur County jury were the reinspection and engineering reports that indicated no damage to the building. The jury's answer, then, that American Mercury did not breach the insurance contract would have been made on that basis: that by refusing payment *at all* on the claim, American Mercury did not breach the agreement. It follows, then, that the judgment stands for the proposition that American Mercury does not owe the $24,055.70 previously issued on the claim and refused by McKnight and Palmer. McKnight and Palmer's post-Upshur County litigation position that American Mercury breached the insurance agreement by refusing payment on the check, then, has already been litigated and was determined when the Upshur County jury determined that American Mercury's refusal to pay any amount on the claim was not a breach of the insurance agreement. Although the Gregg County suit attempts to shift the focus onto the refusal to honor a check, even McKnight and Palmer's own pleadings show that the check was originally issued in connection with the insurance claim. And the Upshur County litigation resulted in a judgment that American Mercury did not owe McKnight and Palmer any amount of money on that insurance claim.

Based on this reading of the record, we conclude that the summary judgment evidence establishes as a matter of law that the claims that American Mercury breached its contract and its duty of good faith and fair dealing by refusing payment on the 2000 insurance claim were litigated and that relitigation of these issues, even cast under a different legal theory, is barred. We overrule McKnight and Palmer's point of error and affirm the trial court's judgment.