

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00160-CV

———————————————

TERESA MARIE SHIELD, MATTHEW WILSON, AND ROBERT HECK,
Appellants

V.

BIO-SYNTHESIS, INC., DNA TESTING CENTRE, INC., AND
RITA CHEN, PH.D., Appellees

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-311669-19

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

Appellants Teresa Marie Shield, Matthew Wilson, and Robert Heck sued Appellees Bio-Synthesis, Inc., DNA Testing Centre, Inc., and Rita Chen, Ph.D. for claims relating to Appellees' conduct in performing an allegedly incorrect paternity test in 2001. Bio-Synthesis and DNA Testing Centre later moved for summary judgment, arguing that (1) Appellants' claims were barred by limitations, (2) Appellants' claims were an impermissible collateral attack on another court's judgment, (3) Appellants' claims were barred by collateral estoppel, (4) Appellants' claims were barred by Section 160.637(e) of the Family Code, and (5) Appellants' claim under the Deceptive Trade Practices Act (DTPA) was improper because Texas does not recognize an implied warranty for services. The trial court later entered an order granting summary judgment to all Appellees on all claims brought against them.

In five issues on appeal, Appellants argue that the trial court erred by granting summary judgment. In their first issue, Appellants argue that summary judgment was improper as to Chen because citation never issued for Chen, Chen did not appear in the lawsuit, and Chen did not file a motion for summary judgment. In their second through fifth issues, Appellants argue that summary judgment was improper to the extent it was granted based on Bio-Synthesis's and DNA Testing Centre's defenses of the statute of limitations, collateral attack, collateral estoppel, and Section 160.637(e)'s requirements regarding how to challenge an adjudication of paternity. *See* Tex. Fam.

2

Code Ann. § 160.637(e). We will sustain Appellants' five issues and reverse the trial court's grant of summary judgment in part. But because Appellants do not challenge the trial court's summary judgment as to Bio-Synthesis's and DNA Testing Centre's argument that Appellants' DTPA claim is improper, we will affirm that portion of the trial court's judgment. Thus, we will affirm in part, reverse in part, and remand the case to the trial court for further proceedings.

## II. BACKGROUND

### A. Factual Background

Wilson was born on February 2, 1989. Shield is Wilson's mother. From 1989 to 2001, Heck believed that he was Wilson's father, lived with Wilson, and raised Wilson.

### 1. The 2001 Paternity Test

In August 2001, Heck filed a suit affecting the parent–child relationship (SAPCR) to establish conservatorship of and child support for Wilson. In October 2001, the court in the SAPCR ordered a paternity test to determine whether Heck was Wilson's biological father. Shield, Heck, and Wilson gave DNA samples to DNA Testing Centre.[1] DNA Testing Centre performed a paternity test on the DNA samples. The results excluded Heck as being Wilson's biological father. On November 12, 2001,

---

[1] The parties dispute whether DNA Testing Centre is a subsidiary of Bio-Synthesis.

Chen certified the paternity-test results. On December 6, 2001, the court in the SAPCR dismissed the SAPCR with prejudice based on the paternity-test results.

### 2. The 2019 Paternity Test

In 2019, one of Wilson's relatives found a DNA match on Ancestry.com showing that the relative shared DNA with Heck's family. Shield contacted Heck about the DNA match, and Appellants agreed to obtain a new DNA paternity test to determine if Heck was Wilson's biological father. In July 2019, Shield, Heck, and Wilson each provided DNA samples for the new paternity test. The new paternity test, which was signed on July 23, 2019, showed a 99.999999998% probability that Heck was Wilson's biological father.

### B. Procedural Background

On September 23, 2019, shortly after obtaining the 2019 paternity-test results, Appellants sued Appellees for violation of the DTPA (as to Bio-Synthesis and DNA Testing Centre); fraud (as to all Appellees); negligence, gross negligence, and negligent misrepresentation (as to all Appellees); negligent hiring, supervision, and management (as to Bio-Synthesis and DNA Testing Centre); and breach of contract (as to Bio-Synthesis and DNA Testing Centre). Bio-Synthesis and DNA Testing Centre each appeared and filed an answer in the suit. Appellants, however, never served Chen with process in the suit, and Chen never appeared or answered the suit.

Bio-Synthesis and DNA Testing Center later filed motions for summary judgment. In their respective motions, Bio-Synthesis and DNA Testing Centre asserted

4

five grounds for summary judgment: (1) that Appellants' claims were barred by limitations, (2) that Appellants' claims constituted an impermissible collateral attack on the judgment in the SAPCR, (3) that Appellants should be collaterally estopped from bringing their claims, (4) that Appellants' claims were barred by Family Code Section 160.367(e), and (5) that Appellants' DTPA claim failed because Texas does not recognize an implied warranty claim. In their summary-judgment responses and in an amended petition, Appellants raised the discovery rule to Bio-Synthesis's and DNA Testing Centre's limitations defenses. Bio-Synthesis and DNA Testing Centre each supplemented their motions for summary judgment to address Appellants' discovery-rule argument, asserting that the discovery rule does not apply to Appellants' claims.

Following a hearing, the trial court granted Bio-Synthesis's and DNA Testing Centre's motions for summary judgment, and it signed a final judgment dismissing "all of [Appellants'] claims and causes of action . . . against [Appellees]" with prejudice. The trial court's order did not specify the grounds for its ruling on the summary-judgment motions. This appeal followed.

## III. DISCUSSION

In five issues, Appellants argue that the trial court erred by granting summary judgment to Appellees.

### A. Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable

to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all elements of that defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant must present summary-judgment evidence that conclusively establishes each element of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

## B. Summary Judgment to Chen

In their first issue, Appellants argue that the trial court erred by granting summary judgment to Chen where citation never issued for Chen, Chen did not appear in the lawsuit, and Chen did not file a motion for summary judgment.

### 1. Applicable Law

A court must have personal jurisdiction over a defendant to issue a binding judgment on that defendant. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). A court obtains personal jurisdiction over a defendant only if that defendant is properly served with process. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012); *In re P. RJ E.*, 499 S.W.3d 571, 574 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (op. on reh'g).

6

If a defendant is not properly served with process, a court lacks personal jurisdiction over that defendant. *See In re P. RJ E.*, 499 S.W.3d at 574.

Moreover, a court may not grant more relief than that to which a party is entitled. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) ("A judgment that grants more relief than a party is entitled to is subject to reversal . . . ."); *Young v. Hodde*, 682 S.W.2d 236, 236–37 (Tex. 1984) (holding that trial court erred by granting plaintiff summary judgment on his claim and dismissing defendant's counterclaim when plaintiff only moved for summary judgment on his claim); *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983) (holding that trial court erred by granting party summary judgment on multiple claims where party only moved for summary judgment on one claim).

In *Sorrow v. Harris County Sheriff*, the Fourteenth Court of Appeals dealt with a similar situation involving the grant of summary judgment to parties who had not been served with process. 622 S.W.3d 496, 505–06 (Tex. App.—Houston [14th Dist.] 2021, pet. denied). There, one defendant appeared and filed a motion for summary judgment on behalf of himself, but the motion did not request relief on behalf of the other defendants who had not been served. *Id.* The trial court granted the motion, but it also dismissed all the plaintiff's claims against all the defendants. *Id.* The Fourteenth Court of Appeals reversed the judgment as to the nonmoving defendants, reasoning that the moving defendant was not entitled to relief that he did not request. *Id.* at 506, 510.

### 2. Analysis

Here, Appellants never served Chen with process, and Chen never made an appearance in the lawsuit. Therefore, the trial court never obtained personal jurisdiction over Chen, and it lacked the authority to grant summary judgment to Chen. *See E.R.*, 385 S.W.3d at 563; *P. RJ E.*, 499 S.W.3d at 574. Moreover, Chen, having not appeared in the lawsuit, never moved for summary judgment on her own behalf, and neither Bio-Synthesis's nor DNA Testing Centre's motions for summary judgment requested relief as to Chen. Thus, the trial court erred by granting summary judgment to Chen.[2] *See Lehmann*, 39 S.W.3d at 200; *Young*, 682 S.W.2d at 236–37; *Chessher*, 658 S.W.2d at 564; *Sorrow*, 622 S.W.3d at 506, 510. We sustain Appellants' first issue.

### C. Limitations and the Discovery Rule

In their second issue, Appellants argue that summary judgment should not have been granted based on Bio-Synthesis's and DNA Testing Centre's respective limitations defenses because of the application of the discovery rule.

---

[2]In its brief, Bio-Synthesis argues that Appellants waived their first issue or should be estopped from asserting their first issue because Appellants' counsel told the trial court at the summary-judgment hearing that the motions set for hearing were dispositive of the entire case. "Waiver and estoppel do not apply, however, when a trial court renders a judgment it has no power to render." *In re Sensitive Care Inc.*, 28 S.W.3d 35, 38 (Tex. App.—Fort Worth 2000, no pet.) (orig. proceeding). Because we conclude that the trial court had no power to enter its judgment as to Chen, we reject Bio-Synthesis's argument.

### 1. Applicable Law Regarding the Statute of Limitations

A statute of limitations establishes a time limit for suing in a civil case. *Goetsch v. Rolls*, No. 02-20-00263-CV, 2021 WL 733090, at *4 (Tex. App.—Fort Worth Feb. 25, 2021, pet. denied) (mem. op.) (citing *Statute of Limitations*, Black's Law Dictionary (11th ed. 2019)). A statute of limitations operates as an affirmative defense to a cause of action. *Dunmore v. Chi. Title Ins. Co.*, 400 S.W.3d 635, 640 (Tex. App.—Dallas 2013, no pet.).

A statute of limitations begins to run on the accrual date, which is the date that the cause of action accrues. *See JPMorgan Chase Bank, N.A. v. Pro. Pharmacy II*, 508 S.W.3d 391, 414 (Tex. App.—Fort Worth 2014, no pet.). A cause of action accrues when facts giving rise to the cause of action come into existence, even if those facts are not discovered until later or the resulting injuries do not occur until later. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011); *Dunmore*, 400 S.W.3d at 640. If a claimant is younger than eighteen years old when the cause of action accrues, then the accrual date is deferred until the claimant turns eighteen years old. Tex. Civ. Prac. & Rem. Code Ann. § 16.001(a)–(b).

The limitations period for Appellants' fraud claims and breach-of-contract claims is four years. *Id.* § 16.004(a)(4) (fraud); *Cosgrove v. Cade*, 468 S.W.3d 32, 35 (Tex. 2015) (breach of contract); *see* Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (prescribing a residual limitations period of four years). The limitations period for Appellants' other claims is two years. Tex. Bus. & Com. Code Ann. § 17.565 (DTPA); *Waffle House, Inc.*

*v. Williams*, 313 S.W.3d 796, 798, 805 (Tex. 2010) (negligent supervision); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999) (negligence); *Hall v. Stephenson*, 919 S.W.2d 454, 467 (Tex. App.—Fort Worth 1996, writ denied) (gross negligence); *Exxon Corp.*, 348 S.W.3d at 202 (negligent misrepresentation); *see* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (providing two-year limitations period for certain claims).

### 2.  Analysis Regarding the Statute of Limitations

The facts giving rise to Appellants' claims relate to Appellees' conduct in performing and certifying the 2001 paternity-test results and to the dismissal of the SAPCR based on those results.  The court in the SAPCR ordered the paternity test in October 2001.  Chen certified the results on November 12, 2001.  The court in the SAPCR dismissed the SAPCR on December 6, 2001.  Thus, the facts giving rise to Appellants' claims came into existence between October 2001 and December 6, 2001.  Considering the evidence in the light most favorable to Appellants, we assume without deciding, for purposes of determining the accrual date, that the facts came into existence on the latest possible date, December 6, 2001.  *See 20801, Inc.*, 249 S.W.3d at 399 (explaining that we indulge every reasonable inference and resolve any doubts in the nonmovant's favor); *Eiland v. Turpin, Smith, Dyer, Saxe & McDonald*, 64 S.W.3d 155, 158–59 (Tex. App.—El Paso 2001, no pet.) (assuming, without deciding, accrual date for purpose of addressing limitations issue).

Under the general rule that a cause of action accrues when facts giving rise to a cause of action come into existence, the statute of limitations for Shield's and Heck's fraud and breach of contract claims expired on December 6, 2005, and the statute of limitations for their remaining claims expired on December 6, 2003. Because Wilson was a minor when the facts giving rise to his causes of action came into existence, his causes of action accrued on February 2, 2007, when he turned eighteen. Therefore, under the general rule, the statute of limitations for Wilson's fraud and breach of contract claims expired on February 2, 2011, and the statute of limitations for his remaining claims expired on February 2, 2009. Appellants, however, did not file suit until September 23, 2019.

### 3. Applicable Law Regarding the Discovery Rule

Appellants claim that the discovery rule deferred the accrual date for their claims. The discovery rule is a narrow exception to the general rule that a cause of action accrues when facts giving rise to the cause of action come into existence. *Berry v. Berry*, No. 20-0687, 2022 WL 1510330, at *4 (Tex. May 13, 2022). The discovery rule defers the accrual date until the claimant discovers, or reasonably should have discovered, the facts giving rise to the cause of action. *Id.* (citing *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)). Deferring the accrual date delays the commencement of the limitations period rather than tolling the limitations period once it has commenced. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996).

11

A defendant who moves for summary judgment based on the statute of limitations bears the burden of proving when the cause of action accrued. *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019). The plaintiff may plead the discovery rule in response to a limitations defense. *See Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018). The defendant need not negate the discovery rule to prove when the cause of action accrued unless the plaintiff pleads the discovery rule. *Erikson*, 590 S.W.3d at 563; *In re Est. of Matejek*, 960 S.W.2d 650, 651 (Tex. 1997). If the plaintiff pleads the discovery rule, the defendant may disprove the discovery rule by proving that (1) it does not apply or (2) it applies but summary-judgment evidence demonstrates that the plaintiff discovered, or reasonably should have discovered, its injury within the limitations period. *Schlumberger*, 544 S.W.3d at 834.

The discovery rule applies to a cause of action if (1) the injury incurred is inherently undiscoverable, and (2) the evidence of the injury is objectively verifiable. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 930 (Tex. 2011). "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Berry*, 2022 WL 1510330, at *4. An injury's nature renders the injury unlikely to be discovered if the type of injury, rather than the plaintiff's particular injury, is not likely to be discovered through reasonable diligence within the limitations period. *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 735 (Tex. 2001). In other words, inherent discoverability depends on whether a person is likely to discover, through reasonable diligence, the type of injury sustained within the

12

limitations period—not whether a plaintiff is likely to discover, through reasonable diligence, its particular injury. *Archer v. Tregellas*, 566 S.W.3d 281, 290 (Tex. 2018); *see Wagner & Brown*, 58 S.W.3d at 735. Whether an injury is inherently undiscoverable is a question of law. *Via Net v. TIG Ins.*, 211 S.W.3d 310, 314 (Tex. 2006).

The Texas Supreme Court has discussed the types of cases in which the wrong and injury to the plaintiff were inherently undiscoverable. *See S.V*, 933 S.W.2d at 6–7; *see also Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 722 (Tex. App.—Dallas 2015, no pet.). "The cases where the court concluded the wrong and injury were inherently undiscoverable were ones in which the wrong and the injury were, by their nature, difficult or impossible to detect until circumstances changed." *Clark*, 460 S.W.3d at 722 (citing *S.V.*, 933 S.W.2d at 6–7). "The common thread in these cases is that when the wrong and injury were unknown to the plaintiff because of their very nature and not because of any fault of the plaintiff, accrual of the cause of action was delayed." *Id.* (quoting *S.V.*, 933 S.W.2d at 7).

### 4. Analysis Regarding Whether the Discovery Rule Applies to Appellants' Claims

We first will consider whether the discovery rule applies to Appellants' claims. *See Schlumberger*, 544 S.W.3d at 834. As noted above, the discovery rule applies to a claim if (1) the injury incurred is inherently undiscoverable, and (2) the evidence of the injury is objectively verifiable. *Shell Oil Co.*, 356 S.W.3d at 930. Here, the parties do not dispute that Appellants' injuries—the familial consequences flowing from an allegedly

13

incorrect result on a paternity test—were objectively verifiable. It remains to be determined whether their injuries were inherently undiscoverable.

In *Matthiessen v. Schaefer*, the San Antonio Court of Appeals held that injuries related to a flood data survey were inherently undiscoverable because a person was unlikely to discover that the flood data was incorrect. 27 S.W.3d 25, 31–32 (Tex. App.—San Antonio 2000, pet. denied). There, a buyer contracted to purchase a flood data survey. *Id.* at 31. The seller's survey included the flood data that the contract required it to include, but the information was incorrect. *Id.* The buyer believed that the survey complied with the contractual requirements, and correct flood data was not publicly available. *Id.* at 31–32. The court of appeals reasoned that, although discovering injuries related to purchasing incorrect flood data was possible, a person was unlikely to discover the injuries because the survey contained the required data, and the buyer did not have evidence that the data was incorrect. *See id.*

Just as the survey in *Matthiessen* contained the required flood data, here, the 2001 paternity test contained the required DNA information. The paternity-test results included a comparison of Shield's, Heck's, and Wilson's respective genetic markers and showed that Heck lacked the genetic markers necessary to be Wilson's biological father. Just as the *Matthiessen* record contained no evidence that correct flood data was publicly available, the record here contains no evidence that correct paternity data even existed,

14

much less that Appellants could access it, in 2001.[3]  And just as our sister court concluded that a person is unlikely to discover injuries related to incorrect flood data, we conclude that a person is unlikely to discover injuries related to incorrect paternity-test results.[4]

In *Nelson v. Krusen*, the Texas Supreme Court addressed a factual situation that resembles this one.  678 S.W.2d 918, 920 (Tex. 1984).  A doctor performed a DNA test to rule a mother out as a carrier of muscular dystrophy, and the doctor erroneously told

---

[3]Bio-Synthesis argues that paternity was inherently discoverable because Appellants had a right to a retest following the 2001 paternity test.  *See* Tex. Fam. Code Ann. § 160.507 ("The court or the support enforcement agency shall order additional genetic testing on the request of a party who contests the result of the original testing.").  But just because Appellants could have asked for a retest does not make their claims inherently discoverable, any more than the fact that the plaintiffs in *Matthiessen* could have paid for an additional flood data survey would make their claims inherently discoverable.

[4]DNA Testing Centre argues that Appellants judicially admitted that they knew that they were injured at the time judgment was entered in the SAPCR, pointing to language in their petition and in an affidavit of Shield stating that as a result of the 2001 paternity test, Wilson had spent the last eighteen years of his life without a father or knowing who his father was, that Heck had spent eighteen years without a relationship with his son, and that Shield had spent several years without Heck supporting Wilson and had spent years not knowing who Wilson's father was.  We disagree.  Those statements were made with the hindsight of the 2019 paternity test, when the results indicated that Heck was Wilson's father.  There is nothing in the record to indicate, however, that Appellants perceived their injuries following the 2001 paternity test.  *See Murphy v. Campbell*, 964 S.W.2d 265, 271 (Tex. 1997) (holding that accounting malpractice involving tax advice is inherently undiscoverable because it is unlikely a layperson would be aware that the tax advice is faulty at the time the advice is received); *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988) (holding that the "injury" in legal malpractice cases is inherently undiscoverable, reasoning that "[i]t is unrealistic to expect a layman client to have sufficient legal acumen to perceive an injury at the time of the negligent act or omission of his attorney").

15

the mother that she was not a carrier for the disease. *Id.* In reliance on that advice, the mother proceeded to have more children, and the doctor's error was not discovered until years after the birth of the mother's next son, when he began to show signs of muscular dystrophy. *Id.* The court remarked that this injury was "not immediately discoverable," and that to strip away the protection of the discovery rule would force the injured parties "to do the impossible—to sue before they had any reason to know they should sue." *Id.* at 923. Strictly speaking, *Nelson* dealt with a different question than the one at issue here; it dealt with whether a statutory provision that restricted access to the discovery rule was constitutional under the open courts provision of the Texas Constitution. *Id.* at 922–23. But later Texas Supreme Court cases have advised that there was another holding lurking in *Nelson*: that the result of the doctor's malpractice in conducting the genetic screening was the type of injury that was inherently undiscoverable until the child's symptoms manifested.[5] *See S.V.*, 933 S.W.2d

---

[5]We recognize that the Texas Medical Liability Act does not contain a discovery rule, and thus "the statute of limitations begins to run from the dates of the events specified in the statute, irrespective of the claimant's delayed knowledge that a departure from the standard of care has occurred." *Pignano v. Cash*, No. 02-21-00168-CV, 2022 WL 60737, at *6 (Tex. App.—Fort Worth Jan. 6, 2022, pet. filed) (mem. op.); *Wright v. Fowler*, 991 S.W.2d 343, 350 (Tex. App.—Fort Worth 1999, no pet.). However, no party here has argued that Appellants' claims should qualify as health care liability claims. *See Guimond v. Integrated Genetics Lab Corp Specialty Testing Grp.*, No. 14-16-00567-CV, 2017 WL 3272292, at *5 (Tex. App.—Houston [14th Dist.] Aug. 1, 2017, pet. denied) (mem. op.) (deeming a suit concerning a mismanaged genetic test on a child to be a health care liability claim). We therefore do not consider the Texas Medical Liability Act's potential impact on the statute of limitations. *See* Tex. R. App. P. 33.1; *cf. Mem'l Hermann Hosp. Sys. v. Hayden*, No. 01-13-00154-CV, 2014 WL 2767128, at *10 (Tex. App.—Houston [1st Dist.] June 17, 2014, pet. denied) (mem. op.).

at 6 (discussing inherent discoverability and summarizing *Nelson*'s holding as "malpractice in muscular dystrophy gene screening could not be discovered by parents until child showed symptoms"); *Comput. Assocs. Int'l,* 918 S.W.2d at 465 (Owen, J., concurring) (stating that "[i]n *Nelson v. Krusen,* . . . the injury was not inherently undiscoverable").

This tacit holding of *Nelson* offers guidance here. Like *Nelson*, the injury here consisted of the consequences flowing from an allegedly erroneous paternity test[6] that severely impacted the plaintiffs' family situation. Under *Nelson*, that type of injury was inherently undiscoverable.[7] Although Bio-Synthesis and DNA Testing Centre argue that Appellants *could* have inquired about how the test was performed, a person taking

---

[6]In its brief, Bio-Synthesis argues that paternity is not inherently undiscoverable, contending that "blood tests can establish biological father[hood] with 'near certainty.'" *See In re J.W.T.*, 872 S.W.2d 189, 197 & n.24 (Tex. 1994) (holding that DNA tests can establish paternity with "near certainty" and that "blood tests can prove virtually beyond a shadow of a doubt who sired a particular child" (quoting *Michael H. v. Gerald D.*, 491 U.S. 110, 140, 109 S. Ct. 2333, 2351 (1989) (Brennan, J., dissenting)). If anything, however, the near-certain nature of paternity tests suggests that it would be unreasonable for someone in Appellants' position—particularly laypersons in Appellants' position—to question the results of a faulty test. *See Erikson*, 590 S.W.3d at 563 (deeming it "unrealistic to expect a layman" to discern wrongful acts that require significant "acumen" to detect).

[7]We recognize that this logic focuses somewhat on whether the allegedly wrongful act—mishandling a paternity test—was inherently undiscoverable rather than whether the injury itself was inherently undiscoverable. But this approach is consistent with the Texas Supreme Court's reasoning in discovery-rule cases where it is unrealistic for a layperson to have sufficient acumen to perceive their injury at the time of the wrongful act by the defendant. *See Murphy*, 964 S.W.2d at 271; *Willis*, 760 S.W.2d at 645.

a paternity test is *unlikely* to inquire about how the test was performed to discover potential injuries related to negligent or wrongful conduct in performing the test.

Because Bio-Synthesis and DNA Testing Centre moved for summary judgment on the discovery rule, they bore the burden to prove at the trial level that summary judgment was proper. Bio-Synthesis and DNA Testing Centre did not prove that a reasonable person taking a paternity test is *likely* to discover injuries related to negligent or wrongful conduct in performing the test. And, we resolve any doubts in favor of Appellants, as the nonmovants. *See 20801, Inc.*, 249 S.W.3d at 399. Thus, we conclude that Bio-Synthesis and DNA Testing Centre did not meet their burden of proving that Appellants' injuries were inherently discoverable. As such, Bio-Synthesis and DNA Testing Centre failed to conclusively establish that the discovery rule does not apply in this case.

### 5. Analysis Regarding Whether the Summary-Judgment Evidence Demonstrates that Appellants Discovered, or Reasonably Should Have Discovered, Their Injuries Within the Limitations Period

We next consider whether the summary-judgment evidence demonstrates that Appellants discovered, or reasonably should have discovered, their injuries within the limitations period. *See Schlumberger*, 544 S.W.3d at 834.

Summary-judgment evidence negates the discovery rule if, as a matter of law, "there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered[,] the nature of its injury." *KPMG Peat Marwick*, 988 S.W.2d at 748. The date that a plaintiff discovered or should

have discovered an injury and whether the plaintiff used reasonable diligence in discovering the injury are questions of fact. *LaTouche v. Perry Homes, LLC*, 606 S.W.3d 878, 884 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (citing *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998)). Therefore, a court may determine, as a matter of law, the date that the plaintiff discovered, or should have discovered, an injury only if reasonable minds could not differ about that date based on the record. *Childs*, 974 S.W.2d at 44.

Here, the summary-judgment record[8] does not establish that Appellants discovered, or reasonably should have discovered, their injuries within the limitations period. The summary-judgment record does not contain any evidence indicating that Heck was Shield's only sexual partner around the time of Wilson's conception, which would have given support to the argument that Appellants (or at least Shield) should have had a strong indication that the test result was incorrect. Nor does the summary-judgment record contain any evidence proving that Appellants should have questioned the validity of the 2001 paternity test. The only glimpse the summary-judgment record offers of the parties' suspicions is the phrasing of one sentence in Shield's affidavit, where she stated, "I raised [Wilson] without child support and spent years not knowing

---

[8]The summary-judgment record consists of the 2001 paternity-test results, the 2019 paternity-test results, various filings in the SAPCR, various filings and discovery responses in the underlying case, an affidavit from Shield, an affidavit from Appellants' expert concerning the 2019 paternity-test results, and a publication called "Standards for Parentage Testing Laboratories" made by the American Association of Blood Banks.

*how* the DNA paternity test showed that [Heck] was not my son's father." (Emphasis added). Bio-Synthesis and DNA Testing Centre both seize on the word "how" as an expression of incredulity at the 2001 test results. Bio-Synthesis and DNA Testing Centre essentially claim that this sentence conclusively establishes Appellants' collective awareness that the 2001 paternity-test results were likely wrong.

But viewing the evidence in the light most favorable to Appellants, we cannot treat this one isolated expression, which only loosely suggests doubt, as a substitute for conclusive proof that Appellants did or should have discovered Appellees' negligent or wrongful conduct. That, at least, is the guidance of *Southwestern Energy Production Co. v. Berry–Helfand*, 491 S.W.3d 699 (Tex. 2016). There, the jury rejected a limitations defense and concluded that the plaintiff did not discover her claim for misappropriation of trade secrets until 2009, which was late enough to avoid a limitations bar. *Id.* at 710. The defendant oil-field operator brought a sufficiency challenge against this finding, which required the operator to conclusively establish that the plaintiff knew or with reasonable diligence could have discovered the misappropriation before early 2006. *Id.* at 722. The Texas Supreme Court documented a number of troubling statements made by the plaintiff in 2005 suggesting her suspicion that the operator was exploiting her trade secrets, including statements that she "felt that there was something wrong," that she was aware that the operator's drilling operation had encroached on the territory that her trade secrets concerned, and that she feared that the concepts and methodology that she had spent years developing were being used by unentitled parties. *Id.* at 723.

20

Nevertheless, on appeal, the court reasoned that this evidence did not conclusively establish the date that the misappropriation was discovered or discoverable. *Id.* at 724. Rather, this evidence amounted to "mere surmise, suspicion, and accusation." *Id.* "Without more, subjective beliefs and opinions are not facts that in the exercise of reasonable diligence would lead to the discovery of a wrongful act." *Id.*

The evidence cited by Bio-Synthesis and DNA Testing Centre in this case—a sentence hinting that Shield may have subjectively questioned the results of the 2001 paternity test—likewise falls short of conclusive proof. Nothing elevates this sentence beyond the level of mere personal suspicion or surmise. *See id.* Moreover, Shield's statement has little bearing on what Heck or Wilson should have suspected about the test, absent any evidence that they shared a common understanding of the test results.

In their briefs, Biosynthesis and DNA Testing Centre point us to *Canada v. Canada* to support their argument that the summary-judgment evidence demonstrates that Appellants discovered, or reasonably should have discovered, their injuries within the limitations period. No. 02-11-00483-CV, 2013 WL 1759894 (Tex. App.—Fort Worth Apr. 25, 2013, no pet.) (mem. op.). In *Canada*, an ex-wife sued her ex-husband in 2011, alleging that he had failed to disclose significant income during their 2000 divorce proceeding. 2013 WL 1759894, at *1. The ex-wife presented evidence that in 2010, she had conducted an internet search where she discovered litigation between her ex-husband and his former employer that revealed that he had earned significant income that he had failed to disclose during the divorce. *Id.* However, the ex-wife had

21

also admitted during a deposition that she had learned in 2002 that her husband had an arbitration proceeding against his former employer but that she had done nothing to investigate it until she ran the internet search in 2010. *Id.* at \*3. The trial court granted the ex-husband's motion for summary judgment that was based on limitations, and the ex-wife appealed to our court. *Id.* at \*1. On appeal, we held that even after viewing the evidence in the light most favorable to the ex-wife, the summary-judgment evidence conclusively established that her claims were filed outside the applicable limitations period and that assuming the discovery rule applied to that type of claim, the ex-husband had conclusively negated the discovery rule by demonstrating that the ex-wife knew that he had claims against his former employer in 2002 and that in the exercise of reasonable diligence she could have discovered the exact nature of those claims. *Id.* at \*5.

*Canada* is distinguishable. The ex-wife in *Canada* knew about the arbitration case between her ex-husband and his former employer in 2002, but she did not do anything with that information until 2010. *Id.* at \*3. A question hung in the air waiting to be answered, but the ex-wife did nothing to answer it. Here, in contrast, the question relating to paternity was answered (although, perhaps incorrectly) by the 2001 paternity test. There is no evidence in the summary-judgment record proving that Appellants

22

should have questioned that answer up until the time that Wilson's relative found a DNA match on Ancestry.com.[9]

We conclude that reasonable minds could differ about the date that Appellants discovered Bio-Synthesis's and DNA Testing Centre's alleged misconduct in performing the 2001 paternity test because the summary-judgment record does not prove that Appellants knew in 2001 that the 2001 paternity-test results were incorrect.[10] Therefore, we sustain Appellants' second issue.

---

[9]To the extent that Bio-Synthesis or DNA Testing Centre rely on *Canada* for the proposition that the discovery rule does not apply to the type of injury at issue here, we reject such a contention, noting that in *Canada*, we simply assumed that the discovery rule applied to the ex-wife's injury and then held that the summary-judgment evidence negated the discovery rule. *Id.* at *5.

[10]We note that plaintiffs similarly situated to Appellants could potentially demonstrate at trial that they did not, and should not have, discovered their injuries within the limitations period. In *Terry v. Niblack*, the Tennessee Supreme Court found that there was no fact question about when a mother discovered her injury relating to an incorrect paternity test and concluded that the mother discovered her injury when she received the results of a second paternity test—not when she received the original, incorrect results. 979 S.W.2d 583, 586–87 (Tenn. 1998). In *Terry*, the mother sued to establish paternity, and the court ordered a paternity test. *Id.* at 584–85. The paternity test showed that the man the mother believed was the child's father was not the child's father; however, the mother believed that it was biologically impossible for the man not to be the child's father. *Id.* at 585. A second test was conducted that established that the man was likely the child's father. *Id.* In addressing whether the evidence demonstrated that the mother discovered, or reasonably should have discovered, her injuries within the limitations period, the Tennessee Supreme Court concluded that knowing about the first test's inaccuracy did not equate to knowing about the testing company's alleged negligence in performing the test. *Id.* at 586.

23

## D. Collateral Attack

In their third issue, Appellants argue that summary judgment should not have been granted based on Bio-Synthesis's and DNA Testing Centre's respective argument that Appellants' claims constituted an impermissible collateral attack on the judgment in the SAPCR.

### 1. Applicable Law

A party may attack a judgment directly or collaterally. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012). A direct attack seeks to correct, amend, modify, or vacate a judgment. *Id.* A collateral attack "seeks to avoid the binding effect of a judgment in order to obtain specific relief that the judgment currently impedes." *Id.* at 272 (citing *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005)). Only a void judgment may be collaterally attacked.[11] *Browning*, 165 S.W.3d at 346. Because courts prefer to give finality to judgments, collateral attacks on judgments are generally disallowed. *Orca Assets, G.P., L.L.C. v. Dorfman*, 470 S.W.3d 153, 159 (Tex. App.—Fort Worth 2015, pet. denied).

A party asserting an impermissible collateral-attack defense must prove that (1) the current suit is a collateral attack, and (2) the attack is impermissible. *See PNS Stores, Inc.*, 379 S.W.3d at 272. In other words, the party must prove that (1) the current

---

[11]A judgment is void when "the court rendering the judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *PNS Stores, Inc.*, 379 S.W.3d at 272.

24

suit seeks to avoid the binding effect of the prior judgment in order to obtain specific relief that the prior judgment currently impedes, and (2) the prior judgment is not void. *See id.*

### 2. Analysis

Bio-Synthesis argues that Appellants seek to avoid the portion of the SAPCR judgment that denied child support because they allege damages for loss of child support in their petition. We disagree. In the present suit, Appellants do not ask the trial court to order Heck to pay past child support. Instead, Appellants seek actual damages from Appellees for costs Shield incurred raising Wilson that Shield would not have incurred but for Appellees' alleged misconduct in performing the 2001 paternity test.

DNA Testing Centre argues that Appellants seek to avoid the SAPCR judgment's effect because they would have to prove that Heck is Wilson's biological father to establish damages, which contradicts the SAPCR court's basis for its paternity judgment. We disagree. The dispute concerning Appellees' alleged misconduct in performing the 2001 paternity test was not at issue in the SAPCR. The dismissal in the SAPCR does not prohibit granting Appellants relief against Appellees relating to their alleged misconduct. Therefore, Appellants' current suit does not seek to avoid the SAPCR judgment's effect. *See Birchman Baptist Church v. Elliott*, No. 02-18-00031-CV, 2018 WL 6113170, at *6 (Tex. App.—Fort Worth Nov. 21, 2018, pet. denied) (mem. op.) (holding that changing insurance policy beneficiary designation did not avoid prior

25

divorce decree's effect because change was not at issue in divorce suit).  Accordingly, we hold that Bio-Synthesis and DNA Testing Centre did not prove their collateral-attack defense because Appellants do not seek to avoid the SAPCR judgment's effect. We sustain Appellants' third issue.

## E.  Collateral Estoppel

In their fourth issue, Appellants argue that summary judgment should not have been granted based on Bio-Synthesis's and DNA Testing Centre's respective collateral-estoppel defenses.

### 1.  Applicable Law

Collateral estoppel prevents relitigating a particular issue already resolved in a prior suit.  *JPMorgan Chase Bank, N.A.*, 508 S.W.3d at 416 (citing *Barr v. Resol. Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992)).  Collateral estoppel is narrower than res judicata—which prevents relitigating a claim that was or could have been resolved in a prior suit—because it prevents relitigating only identical fact issues or legal issues that were actually litigated in and essential to the judgment of a prior suit. *McKnight v. Am. Mercury Ins. Co.*, 268 S.W.3d 793, 798 n.5 (Tex. App.—Texarkana 2008, no pet.); *Rangel v. Rangel*, No. 02-05-411-CV, 2007 WL 291389, at *2 (Tex. App.—Fort Worth Feb. 1, 2007, no pet.) (mem. op.).  A party asserting a collateral-estoppel defense must prove that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action, (2) those facts were essential to the judgment in the

26

first action, and (3) the parties were cast as adversaries in the first action.[12] *In re USAA Gen. Indem. Co.*, 629 S.W.3d 878, 883 (Tex. 2021) (orig. proceeding).

### 2. Analysis

Collateral estoppel would bar Appellants' claims only if Appellants sought to litigate facts in the current suit that were fully and fairly litigated in the SAPCR. In the SAPCR, Appellants litigated facts relating to Wilson's paternity, conservatorship, and support. In contrast, in the current suit, Appellants seek to litigate facts related to Appellees' alleged misconduct in performing the 2001 paternity test. The record does not suggest that facts related to the 2001 paternity test's accuracy or Appellees' alleged conduct in performing the paternity test were raised, litigated, or decided in the SAPCR. Accordingly, we hold that collateral estoppel does not bar the parties from litigating the

---

[12]We note that this case satisfies the requirement that the parties were cast as adversaries in the first action because Appellants were parties to the SAPCR. The parties were cast as adversaries in the first action if the party against whom the collateral-estoppel defense is asserted was a party or in privity with a party in the first action. *BP Auto. LP v. RML Waxahachie Dodge, LLC*, 517 S.W.3d 186, 200 (Tex. App.—Texarkana 2017, no pet.) (citing *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994)). Collateral estoppel applies when "asserted against a party who was actually a party in the first action . . . ." *State & Cnty. Mut. Fire Ins. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001). Thus, the adversary requirement does not necessitate strict mutuality. *Aflatouni v. Enclave at Grapevine, L.P.*, No. 02-17-00366-CV, 2018 WL 2248489, at *4 (Tex. App.—Fort Worth May 17, 2018, no pet.) (citing *Sysco Food*, 890 S.W.2d at 801). Strict mutuality means that the adversaries in the second action were adversaries in the first action. *See Zea v. Valley Feed & Supply, Inc.*, 354 S.W.3d 873, 878 (Tex. App.—El Paso 2011, pet. dism'd).

facts at issue in the current suit. *See JPMorgan Chase Bank*, 508 S.W.3d at 416. We sustain Appellants' fourth issue.[13]

## F. Section 160.637(e)

In their fifth issue, Appellants argue that summary judgment should not have been granted based on Bio-Synthesis's and DNA Testing Centre's respective argument that Family Code Section 160.637(e) bars Appellants' claims. Section 160.637(e) provides that "[a] party to an adjudication of paternity may challenge the adjudication only under the laws of this state relating to appeal, the vacating of judgments, or other judicial review." Tex. Fam. Code Ann. § 160.637(e).

Here, Appellants do not challenge the SAPCR court's paternity adjudication; instead, Appellants allege claims relating to Appellees' alleged misconduct in performing the 2001 paternity test. Accordingly, we hold that Family Code Section 160.637(e) does not apply to Appellants' claims.[14] We sustain Appellants' fifth issue.

---

[13]Bio-Synthesis responds in its brief, for the first time, that res judicata also bars Appellants' claims. Neither Bio-Synthesis nor DNA Testing Centre moved for summary judgment based on res judicata, so that issue is not properly before this court.

[14]In their briefs, Bio-Synthesis and DNA Testing Centre argue that Family Code Section 160.637(e) bars Appellants' claims because Appellants "do not dispute that this provision . . . bars their lawsuit." We disagree. In their response to DNA Testing Centre's motion for summary judgment, Appellants argued that DNA Testing Centre had not established that Appellants' suit was barred by the Family Code, although Appellants discussed the application of Family Code Section 160.637(c) rather than Family Code Section 160.637(e). And on appeal, Appellants contend that Section 160.637 does not apply to this case. Therefore, Appellants directly dispute that Family Code Section 160.637(e) bars their claims. And to the extent that Bio-Synthesis and DNA Testing Centre are arguing that summary judgment is proper to their Section

28

## G. DTPA Claim

In its brief, Bio-Synthesis references the argument made by it and DNA Testing Centre in their respective motions for summary judgment that Appellants' DTPA claim is improper because Texas does not recognize an implied warranty for services. As noted above, the order granting summary judgment did not specify the grounds upon which the trial court relied.

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, we will affirm summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). When the trial court's judgment rests on more than one independent ground or defense, the aggrieved party must assign error to each ground, or we will affirm the judgment on the uncomplained-of ground. *Scott v. Galusha*, 890 S.W.2d 945, 948 (Tex. App.—Fort Worth 1994, writ denied).

Bio-Synthesis and DNA Testing Centre moved for summary judgment on their DTPA claim based on the argument that Texas does not recognize an implied warranty

---

160.637(e) defense because Appellants did not reference Section 160.637(e) in their summary-judgment response, we note that "[t]he nonmovant has no burden to respond to a summary[-]judgment motion unless the movant conclusively establishes its cause of action or defense" and that "[t]he trial court may not grant summary judgment by default because the nonmovant did not respond to the summary[-]judgment motion when the movant's summary[-]judgment proof is legally insufficient." *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 512 (Tex. 2014).

for services, but Appellants did not challenge the order on appeal based on that ground. Accordingly, we affirm the portion of the trial court's order granting summary judgment to Bio-Synthesis and DNA Testing Centre on Appellants' DTPA claim. *See Provident Life & Accident Ins.*, 128 S.W.3d at 216; *Star-Telegram, Inc.*, 915 S.W.2d at 473; *Scott*, 890 S.W.2d at 948.

## IV. CONCLUSION

Having sustained Appellants' five issues, we hold that the trial court erred by granting summary judgment to Bio-Synthesis and DNA Testing Centre on their respective statute-of-limitations, collateral-attack, collateral-estoppel, and Section 160.637(e) defenses. We hold that the trial court did not err by granting summary judgment to Bio-Synthesis and DNA Testing Centre on their respective defenses that Appellants' DTPA claim was improper because Texas does not recognize an implied warranty for services. Therefore, we affirm the portion of the trial court's order granting summary judgment to Bio-Synthesis and DNA Testing Centre on Appellants' DTPA claims, reverse the portion of the trial court's order granting summary judgment to Bio-Synthesis and DNA Testing Centre on Appellants' remaining claims, reverse the portion of the trial court's order granting summary judgment to Chen on all claims, and remand the case to the trial court for further proceedings consistent with this opinion.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  July 21, 2022