**Opinion issued July 14, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-01110-CV

———————————

## IN THE INTEREST OF P. RJ E.

---

### On Appeal from the 314th District Court
### Harris County, Texas
### Trial Court Case No. 2014-06607J

---

## OPINION ON REHEARING[1]

The trial court terminated the parental rights of Pete's[2] biological parents,

including the rights of his alleged father, Kristopher Aaron Smith. Smith argues

---

[1]    The Department of Family and Protective Services moved for en banc reconsideration of our opinion dated June 23, 2016. This motion maintained the Court's plenary power over the case. We withdraw our opinion and judgment dated June 23, 2016, and issue this opinion in its place. Our disposition of the case remains unchanged. A majority of the court having voted to deny en banc consideration, the court denies the Department's motion for en banc consideration.

that the Department of Family and Protective Services never served him its petition to terminate his parental rights, thereby violating his constitutional due-process rights. We agree and, therefore, reverse the trial court's judgment terminating Smith's parental rights and remand for a new trial for him.

## Background

At Pete's birth, his mother tested positive for marijuana. The hospital tried to place Pete with his mother's boyfriend, but the boyfriend tested positive for marijuana and methamphetamine. The Department eventually placed Pete in a foster home.

The Department offered Pete's mother a family service plan to regain custody. Shortly after beginning the plan, Pete's mother decided to relinquish her parental rights and, according to Pete's caseworker, "then disappeared." According to a progress report, his mother did not contact the caseworker again after deciding to relinquish her rights and did not return "letters or phone calls." The Department then filed a petition to terminate Pete's biological parents' parental rights.

Pete's mother originally identified a different man, R.J.E., as Pete's father. R.J.E. was named as Pete's father on Pete's birth certificate. The Department listed him as Pete's father in its original petition and served him. After DNA testing determined that this man was not Pete's father, the Department nonsuited him.

---

[2] To protect his privacy, we identify the child by a pseudonym only.

No one registered as Pete's father in the paternity registry maintained by the Texas Vital Statistics Unit; and thus, the Department began a search to identify his father. After the Department nonsuited R.J.E., it filed a motion for substituted service of Pete's "unknown father" by publication. *See* TEX. R. CIV. P. 109. The trial court granted this Rule 109 motion and the Department served its citation of its first awarded petition to Pete's unknown father through publication.

After the DNA testing, Pete's mother identified a second potential father, stating that the father was either "Christopher Smith or Cash Smith or Cash Trill" and was "in prison." According to the Department caseworker, its initial search "did not reveal any helpful information because the name provided was too common." After more research, the Department located Kristopher Aaron Smith. The Department's attorney later explained that the Department searched for "Kash Trill" on Facebook, which "led to another link for a rap web site. That rapper's name further down gave us the name Kristopher Smith. That's how we got to Kristopher Smith from Kash Trill. And that name was just then run and found in T.D.C.J. . . . ."

After discovering this information—over a month before the hearing on the Department's motion to terminate parental rights—the Department amended its petition to add "Kristopher Aaron Smith" as Pete's alleged father and to terminate his rights. That petition did not include a certificate of service. While the second

3

amended petition requested service on Smith and gave his address, the record does not contain any evidence that the Department personally served him. The "Permanency Report to the Court—Temporary Managing Conservatorship," filed a few weeks before the hearing on the Department's petition, noted that Smith was "recently located" but "not yet served." The record does not contain any evidence or allegation that Smith knew of Pete's birth, his biological connection to the child, (if any), or the termination proceedings.

At the hearing on the Department's petition, when Pete was eleven months old, a court-appointed ad litem attorney assigned to represent Smith was present. He did not object to the hearing or the Department's failure to personally serve Smith, offer any argument, or question the Department's witnesses. At the hearing, the Department did not inform the court that it had located Smith a month earlier but had not personally served him. The trial court did not, on the record, "inquire into the sufficiency of the diligence exercised in attempting to ascertain the residence of whereabouts of the defendant . . . ." TEX. R. CIV. P. 109.

At the conclusion of the hearing, the trial court orally granted the Department's petition to terminate Pete's biological parents' parental rights. The Department then personally served a notice of a hearing on the form of the final judgment. The trial court's final judgment named Smith and stated that it terminated Smith's parental rights.

4

After being served both notices, and after the hearing on the form of the order, Smith filed a motion for a new trial. During the hearing on that motion, the Department informed the court that it had located Smith a month before the termination hearing. The trial court denied Smith's motion.

Smith appeals the trial court's order terminating his parental rights.

**Waiver**

Smith argues that his constitutional due-process right was violated because the Department did not personally serve him its petition to terminate his parental rights. Smith argues that the "record contains no evidence that [he] was served with citation or waived service." He argues that once the Department located him, "it should have proceeded to serve him with citation." If he was not properly served, the trial court lacked personal jurisdiction over him. The Department replies that Smith did not present the due-process argument to the trial court and, thus, waived the issue.

Personal jurisdiction over a defendant requires valid service of process. *See Furst v. Smith*, 176 S.W.3d 864, 868 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (for defendant to be subject to personal jurisdiction, "the plaintiff must invoke that jurisdiction by valid service of process on the defendant."). "If service is invalid, it is of no effect and cannot establish the trial court's jurisdiction over a party." *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) (internal quotation marks

omitted). Thus, a "complete failure of service deprives a litigant of due process and a trial court of personal jurisdiction; the resulting judgment is void and may be challenged at any time." *Id.* at 566. Because a court must have jurisdiction over a defendant to enter judgment binding him, "defective service can be raised for the first time on appeal." *All Com. Floors Inc. v. Barton & Rasor*, 97 S.W.3d 723, 725–26 (Tex. App.—Fort Worth 2003, no pet.); *In re C.T.F.*, 336 S.W.3d 385, 387–88 (Tex. App.—Texarkana 2011, no pet.); *see Musquiz v. Harris Cty. Flood Control Dist.*, 31 S.W.3d 664, 667 (Tex. App.—Houston [1st Dist.] 2000, no pet.).[3] Because a trial court's jurisdiction is dependent on proper service and a party is not required to object to defective service in the trial court, Smith did not waive his argument that he was not served by failing to raise this objection at the trial court. *Wilson v. Dunn*, 800 S.W.2d 833, 837 (Tex. 1990).[4]

---

[3] Contrary to the State's argument, *In re D.R.L.* does not compel an alleged father to object to improper service in a trial court when he was not served to preserve his jurisdiction argument for appeal; in *D.R.L.*, the Department served the alleged father with citation. No. 01-15-00733-CV, 2016 WL 672664, at *3, *10 (Tex. App.—Houston [1st Dist.] Feb. 18, 2016, no pet.) (mem. op.) (terminating alleged father's rights under statute authorizing termination "after being served with citation," implying that alleged father was personally served); *see also* TEX. FAM. CODE ANN. § 161.002(b)(1).

[4] Neither does Smith's motion for new trial constitute a general appearance that waives his right to personal service because a general appearance must be entered before the judgment that is at issue to waive personal service. *See Uche v. Igwe*, No. 05-11-00570-CV, 2012 WL 2785355, at *2 n.1 (Tex. App.—Dallas July 10, 2012, no pet.) (mem. op.) ("We note that any general appearance entered by Uche after the granting of the default judgment did not waive any defects in service or validate the default judgment"); *Williams v. Nexplore Corp.*, No. 05-09-00621-

## Due Process

Because "[t]he parties have not identified any difference between the state and federal guarantees material to the issues in this case," we treat those due-process protections as the same. *In re E.R.*, 385 S.W.3d at 566 n.25. The "process" required by the "due process" clause "is measured by a flexible standard that depends on the practical requirements of the circumstances." *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). But, at a minimum, due process requires "notice and an opportunity to be heard . . . ." *Id.*

Smith argues that, as applied, two provisions of the Family Code—Sections 161.002(b)(3) and 161.002(c-1)—violated his due-process right to notice and an opportunity to be heard. The Department argues that, under these provisions of the Family Code, it was not required to serve Smith. But the issue raised by Smith is not a question of the interpretation of either statute. Nor does Smith raise a facial challenge to their constitutionality. Instead, Smith contends that, as applied under these circumstances—when the alleged father's identity and location become known by the Department, the Department joins him as a party, and there is no evidence that the father knew of the mother's pregnancy or had reason to know

---

CV, 2010 WL 4945364, at *3 (Tex. App.—Dallas Dec. 7, 2010, pet. denied) (mem. op.) ("[A] general appearance which waives defects in service must *precede* any action of the court which such appearance validates").

7

that he might be the child's father—the failure to personally serve him as permitted under Sections 161.002(b)(3) and 161.002(c-1) violates his right to due process.

The Family Code allows a trial court to terminate the parental rights of an unspecified "alleged father" if "the child is under one year of age at the time the petition for termination of the parent-child relationship or for adoption is filed and he has not registered with the paternity registry . . . ." TEX. FAM. CODE ANN. § 161.002(b)(3) (West Supp. 2015). Section c-1 provides that personal service or service by publication is not required in this situation:

> The termination of the rights of an alleged father . . . does not require personal service of citation or citation by publication on the alleged father, and there is no requirement to identify or locate an alleged father who has not registered with the paternity registry under Chapter 160.

TEX. FAM. CODE ANN. § 161.002(c-1). Nevertheless, the Department elected to invoke the trial court's jurisdiction over Smith by naming him individually in the lawsuit, proceeding with the hearing with an ad litem for Smith without, based on this record, Smith's knowledge after he had been located, and obtaining a judgment against him.

A party challenging the constitutionality of a statue "as-applied" is only required to show that the statute operates unconstitutionally when applied to his particular circumstances. *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 702 (Tex. 2014). We agree that Smith's unusual circumstances demonstrate that his due-

8

process rights were violated because he was not served through personal service. *See In re E.R.*, 385 S.W.3d at 555, 565. If the Department knows the alleged father's identity and location, names him in the lawsuit, and obtains a judgment against him, due process requires it to obtain personal service on him. *See generally id.* Due process requires personal service under these facts because a "parental rights termination proceeding encumbers a value far more precious than any property right . . . ." *Id.* at 555. "When the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures. The most basic of these is notice." *Id.* at 554. The Texas Supreme Court in *E.R.* stated that to fail to obtain personal service when the Department knows the location of a mother is "poor, hopeless, and unjustif[ied] . . . ." *Id.* at 555. The same holds true for an alleged father that the Department identifies, locates, and names in the termination lawsuit. *See id.* at 566 ("Despite the Legislature's intent to expedite termination proceedings, it cannot do so at the expense of a parent's constitutional right to notice.").

The Department knew of Smith's identity and address at least one month before the termination hearing and his identity matched the descriptive information the mother gave the Department. Upon locating Smith, the Department specifically amended its petition to terminate Smith's parental rights, joined Smith as a party, sought a decree terminating Smith's rights, and eventually obtained a judgment

against him. It did so without personal service on Smith. While a father's interest as a biological father may be insufficient in itself to require notice and an opportunity to be heard, the Department attempted to invoke the jurisdiction of the court over Smith individually. Thus, due process requires here that the Department take the minimal burden of obtaining personal service on Smith rather than relying on the earlier service by publication on "unknown fathers." *See In re E.R.*, 385 S.W.3d at 555.

We recognize that *In re E.R.* addressed a mother who did not receive personal service. But the Texas Supreme Court cited with approval a case from the Iowa Supreme Court that held that a father must be personally served before his parental rights can be terminated. *See id.* at 565 (discussing *In re S.P.*, 672 N.W.2d 842, 848 (Iowa 2003)). Thus, the due process concerns expressed in *In re E.R.* apply equally to alleged fathers whose identity and location are known, who are joined as a party and named in the judgment, and who did not know of the mother's pregnancy or the child's birth.

The Department argues that, to the extent it was required to serve Smith, Smith's due-process rights have been protected because it served Pete's "unknown father" by publication. The Family Code authorizes service of citation by publication to "persons whose names are unknown" or to an alleged father whose

last name is unknown. TEX. FAM. CODE ANN. § 102.010(a) (West 2014); *id.* § 102.010(e).

We reject the Department's argument that due process was satisfied by serving Pete's "unknown father" by publication for four reasons. First, it did not serve Smith through service by publication. Months before it identified and located Smith, it served Pete's "unknown father." Once it identified and located Smith, it amended its petition and requested personal service on him. But service was never obtained. Second, "as to a known beneficiary with a known address," notice by publication is "not reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re E.R.*, 385 S.W.3d at 559, 560 (internal quotation marks and citations omitted) (holding, after discussing line of due process cases, that "[f]rom these decisions, we can distill a common principle: when a defendant's identity is known, service by publication is generally inadequate."). Third, the Department knew Smith's full name and address about one month before the hearing on terminating his parental rights; therefore, service by publication was not adequate.[5] *See id.* at 555 (service by publication of mother did

---

[5] The trial court's fact findings state that Smith either "waived service of process" or was "served with citation in this suit . . . ." We cannot accept a trial court's fact findings, however, if no evidence exists to support that finding. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.); *Chitsey v. Pat Winston Interior Design, Inc.*, 558 S.W.2d 579, 581 (Tex. App.—Austin 1977, no

11

not satisfy due process). When it is "both possible and practicable to more adequately warn" the parent "of the impending termination of her parental rights" notice by publication is inadequate. *Id.* at 556. The Department does not identify any reason that personal service should not be attempted instead of relying on an earlier service by publication with the additional cost of an attorney ad litem.

Finally, by rejecting personal service and opting to rely on its earlier service by publication, the Department also undermines its ability to locate not only the father but members of the father's family who may be candidates for raising the child who is the subject of the lawsuit. *Cf.* TEX. FAM. CODE ANN. § 161.107(b), (c), & (e) (West 2014) (requiring Department, in situations not dealing with alleged fathers, to make "diligent effort to locate" parent, give relative of the missing parent "opportunity to request appointment as the child's managing conservator," and give court evidence of actions taken to "locate the missing parent and relative of the missing parent").[6]

---

writ). Although a court-appointed ad litem attorney for "alleged fathers" appeared at the termination hearing and did not object to the lack of notice, his presence cannot act as a waiver of Smith's due process right to notice because "[t]he due process right to notice . . . . must be voluntary, knowing, and intelligently waived" and must be provided "in a meaningful matter." *In re K.M.L.*, 443 S.W.3d 101, 119 (Tex. 2014).

[6]   Perhaps it is for this reason of protecting the best interests of the child that the Department has adopted a policy to personally serve "[e]ach parent (including an alleged father), unless the parent's rights are terminated or DFPS services are waived." TEX. DEP'T OF FAMILY & PROT. SERVS., CHILD PROTECTIVE SERVICES HANDBOOK § 5220, http://www.dfps.state.tx.us/Handbooks/CPS/Files/CPS_pg

12

The State cites *Lehr v. Robertson*, 463 U.S. 248, 103 S. Ct. 2985 (1983) and *In re Baby Girl S.*, 407 S.W.3d 904 (Tex. App.—Dallas 2013, pet. denied) to support its argument that due process does not require it to personally serve an alleged father. Both *Lehr* and *Baby Girl S.* are distinguishable because the State undeniably knew Smith's identity and location, and joined him personally in the parental termination proceedings, before terminating his parental rights without personal service.

In *Lehr*, the Court rejected a due process claim by an unmarried father who sought notice and an opportunity to be heard before an adoption. 463 U.S. at 250–51. But the father in *Lehr* knew of the child's existence—he lived with the mother before the child's birth, visited the mother in the hospital when the child was born, and occasionally saw the child during the two years after the child was born—and yet chose not to protect his ability to have parental rights of his child by entering his name in a paternity registry. *Id.* at 252. Nothing in the record shows that Smith,

---

_5200.asp#cps-menu. One commentator notes that "[t]he practitioner takes a serious risk by failing to notify a probable known father . . . regardless of whether or not he is registered—think 'due process.'" JOHN F. ELDER, 33 TEX. PRAC. HANDBOOK OF TEX. FAMILY LAW: A QUICK REFERENCE GUIDE TO THE FAMILY CODE § 14.8 (West 2015). Because failure to obtain personal service on an known father may "produce[] an invalid judgment which then is subject to attack at any time, and statutes which are in conflict cannot prevail to sustain the judgment," the commentator suggests "do not take the chance. Do the service and do not rely on 'waivers' contained within the registry statute." *Id.* As noted above, the Department requested personal service on Smith, although the record does not show that it served Smith.

unlike the father in *Lehr*, knew of the pregnancy or birth or that he should assume parental duties.

Similarly, *In re Baby Girl S.*, involving termination of a father's parental rights in an adoption proceeding, is distinguishable because the mother chose not to identify the father, no other party knew the identity of the father, and the father was not specifically named as a party in the case. 407 S.W.3d at 907. Additionally, the alleged father should have known that the mother might have been pregnant. *Id.* at 918. No such evidence exists here. Nor does the record include any indications of upcoming deadlines in a pending adoption proceeding that might require accelerated action to protect Pete's best interest.

Because Smith was not served the Department's petition to terminate his parental rights in violation of his constitutional due-process right, we reverse the trial court's judgment.[7]

## Conclusion

We affirm the trial court's judgment with respect to the mother, reverse the trial court's judgment terminating the father's parental rights, and remand for a new trial with respect to the father.

---

[7] Because Smith's argument does not require an interpretation of Sections 161.002(b)(3) and 161.002(c-1) of the Family Code and Smith's due-process right was violated absent proper service, we do not determine whether the Family Code provisions are facially unconstitutional or whether Smith was required to notify the attorney general of his constitutional challenge. Nor do we reach the issue of whether Smith's court-appointed ad litem attorney provided effective assistance of counsel.

Harvey Brown
Justice

Panel consists of Justices Bland, Brown, and Lloyd.