**Opinion issued December 19, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-23-00357-CV**

———————————

**KHYBER HOLDINGS, LLC, Appellant**

**V.**

**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR MERILL LYNCH MORTGAGE INVESTORS TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2006-RM5, Appellee**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-08505**

---

## MEMORANDUM OPINION

This case arises out of a dispute over the title to residential real property located at 760 Thicket Lane in Houston, Texas ("Property"). Appellee U.S. Bank National Association ("U.S. Bank") claims an interest in the Property through assignments of a deed of trust executed by the original purchasers of the Property, who defaulted on their loan repayment obligations. Appellant Khyber Holdings, LLC ("Khyber") claims an interest in the Property because it bought the Property at a foreclosure sale when the homeowner association ("HOA") foreclosed on an assessment lien after the original purchasers failed to pay their HOA fees.

Khyber sued to quiet title and declare invalid the deed of trust then owned by U.S. Bank's predecessor in interest. But Khyber did not name U.S. Bank's predecessor as a defendant—it instead named a prior owner of the deed of trust—and U.S. Bank's predecessor was never served with process. Khyber's petition went unanswered, and Khyber sought a default judgment. The trial court entered a default judgment for Khyber, holding that Khyber owned the Property free and clear of the deed of trust.

Several years later, after U.S. Bank had acquired the deed of trust by assignment, it discovered the default judgment declaring Khyber the Property owner. U.S. Bank filed this suit seeking a bill of review. The trial court granted summary

judgment for U.S. Bank on both its bill of review and on Khyber's counterclaims. Khyber appealed, and we affirm.

## Background

Paul and Alba Rhoads bought the Property in 2006. They borrowed $104,500 from Resmae Mortgage Corporation ("Resmae") to fund a portion of the purchase price, and they executed a promissory note for that amount to Resmae. To secure the note, the Rhoadses executed a deed of trust, entitled "Texas Home Equity Security Instrument (First Lien)" ("Deed of Trust"). The Deed of Trust shows Resmae as the lender and states that "the beneficiary of this Security Instrument is MERS [Mortgage Electronic Registration Systems, Inc.] (solely as nominee for [Resmae] and [Resmae's] successors and assigns) and the successors and assigns of MERS."

The Rhoadses failed to pay the required assessment fees to their HOA, and the HOA foreclosed on its assessment lien. In December 2008, the HOA conducted a foreclosure sale at which Khyber was the highest bidder. Khyber bought the Property for $2,200, "with no warranties, express or implied, and subject to any and all liens . . . or other matters of record."

In March 2009, about four months after Khyber bought the Property, MERS conveyed its interest in the Deed of Trust to Bank of America ("BofA"). In an instrument entitled "Corporate Assignment of Mortgage/Deed of Trust," MERS assigned "[a]ll beneficial interest under [the Deed of Trust] . . . [t]ogether with the

note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under this Mortgage/Deed of Trust" to BofA "as successor by merger to LaSalle Bank, N.A. as Trustee for the MLMI Trust Series 2006-RM5." The assignment from MERS to BofA was recorded in the county real property records on March 10, 2009.

A few weeks after it acquired the Deed of Trust, BofA sought to foreclose on the Property. It applied for expedited foreclosure, alleging that it had accelerated the amounts due under the note and sought to conduct a nonjudicial foreclosure sale. *See* TEX. R. CIV. P. 736. But BofA did not follow through with the foreclosure; in June 2009, BofA nonsuited its application for expedited foreclosure without prejudice.

In April 2009, almost two months after MERS assigned the Deed of Trust to BofA, Khyber sued MERS for a judgment declaring that the Deed of Trust was "invalid and unenforceable, ordering it removed from the title to the [P]roperty, . . . and quieting title in [Khyber]" ("2009 Lawsuit"). Khyber served MERS through the Texas Secretary of State at MERS's regional office in Ocala, Florida. At the time, MERS's home office was in Reston, Virginia. Although BofA owned the Deed of Trust when Khyber filed the 2009 Lawsuit, Khyber did not name BofA as a defendant or serve it with process.

MERS did not answer the 2009 Lawsuit. In July 2009, about four months after BofA assigned its interest in the Deed of Trust to U.S. Bank, Khyber moved for

4

default judgment. The trial court granted that motion. It entered a default judgment finding that MERS "did not file an answer or any other pleading constituting an answer" and concluding that Khyber "is the owner of [the Property]," that the Deed of Trust "is void and of no force and effect," and that the Deed of Trust "is removed from the title to the [Property]." Khyber claims it has "controlled the Property" from the time the trial court entered the default judgment in 2009 to the present.

Over 10 years later, in October 2019, BofA assigned the Deed of Trust to U.S. Bank. As U.S. Bank was preparing to foreclose on the Property, it conducted a title search that revealed the default judgment from the 2009 Lawsuit.

U.S. Bank then filed this suit, seeking a bill of review and a judgment setting aside the default judgment. U.S. Bank's original petition alleged that its due process rights were violated because its predecessor in interest, BofA, "did not receive notice of the 2009 Lawsuit." U.S. Bank later amended its petition to add an allegation that the address Khyber provided to the Texas Secretary of State to serve MERS with the 2009 Lawsuit was "neither the home office of MERS nor a valid address for MERS at that time," such that neither BofA nor MERS "received proper service of process and notice of [the 2009 Lawsuit]."

In response to U.S. Bank's suit, Khyber filed a plea to the jurisdiction, arguing U.S. Bank lacked standing to seek a bill of review. The trial court denied the plea. Khyber counterclaimed, in which it sought a judgment declaring that the limitations

5

period on U.S. Bank's claim to foreclose had expired, such that the Deed of Trust was invalid and unenforceable, and quieting title to the Property in Khyber. Khyber also sought discovery from U.S. Bank, as well as from nonparties BofA and MERS. MERS moved to quash Khyber's subpoena, and Khyber moved to compel.

Some discovery proceeded, and U.S. Bank moved for summary judgment on both its bill of review and Khyber's counterclaims. U.S. Bank's motion for summary judgment argued that Khyber's 2009 Lawsuit "sued an entity with no interest in the Property [MERS]," that "MERS was not the correct party to sue and serve," and that the default judgment was "void given the complete failure of service of process." In response, Khyber moved for a continuance to obtain further discovery about the relationship between MERS, BofA, and U.S. Bank, among other things.

The trial court granted U.S. Bank's motions and entered summary judgment in its favor. The trial court's amended final judgment states: (1) the default judgment from the 2009 Lawsuit is "set aside and of no force and effect"; (2) Khyber "take[s] nothing on its counterclaims against U.S. Bank"; and (3) it "is substituted for the no-answer default judgment" entered in the 2009 Lawsuit. The trial court also denied Khyber's motions to compel and for a continuance. Khyber moved for a new trial, and the trial court denied that as well. This appeal followed.

**Analysis**

In seven issues, Khyber contends the trial court's judgment should be reversed because: (1) U.S. Bank lacked standing to bring its bill of review (Issue 1); (2) Khyber properly served MERS with the 2009 Lawsuit, such that the trial court had personal jurisdiction over it (Issues 4–6); (3) the trial court abused its discretion by denying Khyber's motion to continue the hearing on U.S. Bank's motions for summary judgment (Issue 2); (4) the trial court abused its discretion by denying Khyber's motion to compel discovery from MERS (Issue 3); and (5) U.S. Bank's ability to foreclose on the lien created by the Deed of Trust is barred by the statute of limitations (Issue 7).

## I. U.S. Bank Had Standing to Seek a Bill of Review.

Khyber first contends U.S. Bank lacked standing to seek a bill of review. The bases for Khyber's standing argument are that "U.S. Bank was not a party to the [2009 Lawsuit]" and "U.S. Bank . . . did not have any existing right in 2009 to the Lien [created by the Deed of Trust]." We disagree, because "an assignee of a note and deed of trust ha[s] standing, by virtue of the assignment, to assert a violation of the prior lienholder's due-process rights through an attack on an existing judgment by bill of review." *Kingman Holdings, LLC v. Mortg. Elec. Registration Sys., Inc.*, No. 05-15-01353-CV, 2016 WL 8115937, at *7 (Tex. App.—Dallas Oct. 27, 2016,

no pet.) (mem op.) (citing *HSBC Bank USA, N.A. v. Watson*, 377 S.W.3d 766, 777 (Tex. App.—Dallas 2012, pet. dism'd)).

Standing is a component of subject matter jurisdiction. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). "The requirement in this State that a plaintiff have standing to assert a claim derives from the Texas Constitution's separation of powers among the departments of government, which denies the judiciary authority to decide issues in the abstract, and from the Open Courts provision, which provides court access only to a 'person for an injury done him.'" *DaimlerChrysler v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008) (quoting TEX. CONST. art. 1, § 13).

The issue of standing thus focuses on whether a plaintiff has a sufficient relationship with the lawsuit to have a "justiciable interest" in its outcome. *Austin Nursing Ctr*., 171 S.W.3d at 848. To have standing: (1) a plaintiff "must be personally injured—he must plead facts demonstrating that he, himself (rather than a third party or the public at large), suffered the injury," and the injury must be "concrete and particularized, actual or imminent, not hypothetical"; (2) "the plaintiff's alleged injury [must] be fairly traceable to the defendant's conduct"; and (3) "the plaintiff's alleged injury [must] be likely to be redressed by the requested relief." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 155 (Tex. 2012) (citations and internal quotation marks omitted).

Khyber's argument appears to focus on standing's first element, the requirement that a plaintiff be "personally injured." *Id*. It contends that because U.S. Bank had no interest in the Deed of Trust at the time of the 2009 Lawsuit, it was not personally injured by the 2009 default judgment and thus lacks standing to seek a bill of review. According to Khyber, "[t]he only party that can bring this collateral attack on the 2009 Judgment is MERS," because MERS was "the named defendant" in the 2009 Lawsuit.

Khyber cites no authority to support these contentions. U.S. Bank undisputedly had no interest in the Deed of Trust at the time the 2009 Lawsuit began or ended. But it is equally undisputed that its predecessor, BofA, owned the Deed of Trust at that point, and that BofA later assigned the Deed of Trust to U.S. Bank. And when an assignee holds a valid assignment, the assignee steps into the assignor's shoes and is considered to have suffered the same injury as the assignors, and thus it generally has the same ability to pursue the assignor's claims. *S.W. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 916 (Tex. 2010) (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 572 (Tex. 2001)).

Texas courts also apply this general rule in the specific circumstances presented here; they hold that an assignee of a deed of trust has standing to seek a bill of review of a default judgment affecting the interests of its assignor and predecessor in interest. *See, e.g.*, *Kingman Holdings*, 2016 WL 8115937, at *7. And

9

these facts reveal that such a holding is consistent with the standing doctrine's requirement that a plaintiff be "personally injured," *Heckman*, 369 S.W.3d at 155, because U.S. Bank is now precluded by the 2007 default judgment from foreclosing on its Deed of Trust. Therefore, U.S. Bank had standing to bring its bill of review. *Accord* TEX. PROP. CODE §§ 51.0001(6), .002, .0025 ("mortgagee" has standing to initiate nonjudicial foreclosure sales, and mortgagees include "the last person to whom the security interest has been assigned of record").

Khyber also claims that even if U.S. Bank "is a proper party to at least initiate this suit as an assignee of [BofA]," the trial court nonetheless erred in granting summary judgment because "there are still outstanding jurisdictional questions that discovery is needed for." Khyber tries to raise two such "outstanding jurisdictional questions." First, it questions "whether U.S. Bank is a successor to [BofA]." And second, it notes that BofA took title to the Deed of Trust when it merged with another bank that was acting as trustee for a pool of security instruments, and then asserts that "[t]hese types of trusts are governed by very long and detailed pooling and service agreements and failure to comply with one of the conditions in these agreements can render a transfer void."

Again, Khyber offers no support for either of these contentions, and neither of them requires reversal or entitles Khyber to further discovery. As to Khyber's first "jurisdictional question," the real property records included within the appellate

10

record show that BofA assigned its interest in the Deed of Trust to U.S. Bank. Nothing in the record suggests there is any reason to doubt the validity of that assignment, and Khyber points to no evidence that would call it into question to warrant further discovery. *Cf. In re United Fire Lloyds*, 578 S.W.3d 572, 578 (Tex. App.—Tyler 2019, no pet.) ("The scope of discovery is broad, but requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution. . . . Discovery may not be used as a fishing expedition." (citations and internal quotation marks omitted)).

As to Khyber's second jurisdictional question, litigants have no right to challenge assignments as violating a pooling and service agreement ("PSA") unless they are parties to, or a third-party beneficiary of, the agreement. *See Ybarra v. Ameripro Funding, Inc.*, No. 01-17-000224-CV, 2018 WL 2976126, at *4 (Tex. App.—Houston [1st Dist.] June 14, 2018, pet. denied) (mem. op.) ("To begin, Ybarras are not parties to the PSA; nor do they contend that they are third-party beneficiaries of the PSA. . . . Accordingly, they may not enforce the PSA's terms." (citation omitted)). Khyber does not contend it was a party to or beneficiary of any PSA. Therefore, its argument that it is entitled to discovery aimed at challenging the PSA is unavailing. *See id.* We overrule Khyber's first issue.

**II.      The Trial Court Properly Granted the Bill of Review Because U.S. Bank's Predecessor in Interest Did Not Receive Service of Process of the 2009 Lawsuit.**

Khyber's fourth, fifth, and sixth issues focus on service of process of the 2009 Lawsuit. Khyber contends that although it served MERS at a regional office rather than at MERS's home office, its service on MERS was nonetheless effective. According to Khyber, the trial court thus had personal jurisdiction over MERS in the 2009 Lawsuit, such that its 2009 default judgment against MERS, invalidating the Deed of Trust, should stand. And for this reason, Khyber claims the trial court erred in granting summary judgment on U.S. Bank's bill of review.

The problem with this argument is that MERS was not the correct defendant in the 2009 Lawsuit. Almost two months before Khyber filed the 2009 Lawsuit and nearly four months before it sought default judgment, MERS assigned the Deed of Trust to BofA, U.S. Bank's predecessor in interest, and recorded that assignment in the Harris County real property records. Therefore, MERS no longer had an interest in the Deed of Trust when Khyber commenced the 2009 Lawsuit. *See Campbell v. Mortg. Elec. Registration Sys., Inc.*, No. 03-11-00429-CV, 2012 WL 1839357, at *5 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.) ("When MERS transferred the deed of trust to Wells Fargo, Wells Fargo obtained all MERS's rights and interests in the deed of trust . . . ."). Whether Khyber properly served MERS is immaterial.

Instead, the relevant question is whether Khyber properly served BofA—the owner of the Deed of Trust at the time. Khyber makes no argument that it did, and the record likewise contains no such indication. Therefore, the default judgment purporting to invalidate the Deed of Trust cannot stand, and the trial court properly granted summary judgment on U.S. Bank's bill of review. *See Dezso v. Harwood*, 926 S.W.2d 371, 373 (Tex. App.—Austin 1996, writ denied) ("If the wrong defendant was served, the default judgment cannot stand."); *see also Ross v. Nat'l Ctr. for the Emp. of the Disabled*, 197 S.W.3d 795, 797 (Tex. 2006) ("[A] defendant who is not served with process is entitled to a bill of review without a further showing.").

Because this case comes to us from a summary judgment granted on U.S. Bank's bill of review, we begin by discussing the standards applicable to each of those things.

### A.     Bill of Review Standards.

A bill of review is an equitable proceeding brought by a party seeking to set aside a prior judgment that can no longer be challenged by a motion for new trial or a direct appeal. *See* TEX. R. CIV. P. 329b(f) ("On expiration of the time within which the trial court has plenary power, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause, filed within the time allowed by law."); *Mabon Ltd. v. Afri-Carib Enters., Inc.*, 369 S.W.3d 809, 812 (Tex. 2012); *Caldwell*

13

*v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004). It is designed to prevent manifest injustice. *See French v. Brown*, 424 S.W.2d 893, 895 (Tex. 1967). "Courts narrowly construe the grounds on which a plaintiff may obtain a bill of review due to Texas's fundamental public policy favoring the finality of judgments." *Mabon*, 369 S.W.3d at 812.

A plaintiff seeking a bill of review ordinarily must plead and prove three things: (1) a meritorious defense to the underlying cause of action; (2) that it was prevented from making that meritorious defense by the fraud, accident, or wrongful conduct of the opposing party, or because of official mistake; and (3) that the fraud, accident, or wrongful conduct of the opposing party was "unmixed with any fault or negligence" of the plaintiff. *Caldwell*, 154 S.W.3d at 96. But a bill of review plaintiff who claims lack of service of process or notice of the underlying suit is excused from proving the first two elements. *Id.* at 96–97. "[I]f a plaintiff was not served, constitutional due process relieves the plaintiff from the need to show a meritorious defense." *Id.* at 96. And lack of service also means "the plaintiff is relieved from showing that fraud, accident, wrongful act or official mistake prevented the plaintiff from presenting such a defense." *Id.* (citations omitted).

Still, Plaintiffs claiming non-service must prove the third element: "that the judgment was rendered unmixed with any fault or negligence of their own." *Id.* This third element can be shown by a lack of service of process of the underlying suit,

because "[a]n individual who is not served with process cannot be at fault or negligent in allowing a default judgment to be rendered." *Id*. "Proof of non-service, then, will conclusively establish the third and only element that bill of review plaintiffs are required to prove when they are asserting lack of service of process as their only defense." *Id*.; *see also Brown v. Joe Jordan Trucks, Inc.*, No. 05-23-00676-CV, 2024 WL 3063788, at *6 (Tex. App.—Dallas June 20, 2024, no pet.) (mem. op.) ("Thus, when a petitioner proves that he or she has not been properly served, the petitioner is entitled to a bill of review without a further showing.").

Although we typically review the grant or denial of a bill of review for abuse of discretion, s*ee Joseph v. Jack*, 624 S.W.3d 1, 6 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *Manley v. Parsons*, 112 S.W.3d 335, 337 (Tex. App.—Corpus Christi–Edinburg 2003, pet. denied), we review a summary judgment on a bill of review by applying the summary judgment standard. *See Wolfe v. Grant Prideco, Inc.*, 53 S.W.3d 771, 773 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (citing *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995)).

## B.    Summary Judgment Standards.

In a traditional summary judgment motion, the movant must "show that except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion . . . ." TEX. R. CIV. P. 166a(c); *see also Provident Life*

15

*& Acc. Ins. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). A movant who conclusively negates at least one essential element of the nonmovant's cause of action is entitled to summary judgment on that cause of action. *See Randall's Food Mkts.*, 891 S.W.2d at 644. Likewise, a defendant who conclusively establishes each element of an affirmative defense is entitled to summary judgment. *See id*. Once the movant establishes a right to summary judgment, the nonmovant must respond to the motion and present to the trial court any issues that would preclude summary judgment. *See City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

We review a summary judgment de novo. *See Boerjan v. Riodriguez*, 436 S.W.3d 307, 310 (Tex. 2014). We review the record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *See Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). "When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000). And, as both parties agree, "[i]f the appellant fails to negate every possible ground upon which judgment may have been granted, an appellate court must uphold the summary judgment." *Seifried v. Hygienic Corp.*, 410 S.W.3d 427, 431 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)).

## C. The Trial Court Properly Granted Summary Judgment in Favor of U.S. Bank.

Under these standards, the trial court properly granted summary judgment on U.S. Bank's bill of review. "An elementary and fundamental requirement of due process in any proceeding to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (quoted in *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273 (Tex. 2012)). "Failure to give notice violates the most rudimentary demands of due process of law," *Peralta v. Heights Med. Ctr.*, 485 U.S. 80, 84 (1988), and a trial court has "no more solemn judicial obligation than that of seeing that no litigant is unjustly saddled with a judgment in the absence of notice and a hearing." *Finlay v. Jones*, 435 S.W.2d 136, 138–39 (Tex. 1968).

Therefore, a default judgment entered against a defendant who has not been served with process violates its due process rights and must be set aside. *Marrot Commc'ns, Inc. v. Town & Country P'Ship*, 227 S.W.3d 372, 376 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("Unless the record affirmatively shows, at the time the default judgment is entered, either an appearance by the defendant, proper service of citation on the defendant, or a written memorandum of waiver, the trial court does not have in personam jurisdiction to enter the default judgment against the defendant." (citation and internal quotation marks omitted)).

The only defendant Khyber named in the 2009 Lawsuit, and the only defendant it served with process, was MERS. But MERS was the wrong defendant to sue. Before the 2009 lawsuit, MERS assigned "[a]ll beneficial interest" in the Deed of Trust, including "all rights accrued or to accrue under [it]," to BofA. MERS thus had no interest in the Deed of Trust when Khyber filed the 2009 Lawsuit and obtained the default judgment; BofA owned all of it. *See Campbell*, 2012 WL 1839357, at *5 (when MERS assigned its interest in deed of trust, assignee "obtained all MERS's rights and interests in the deed of trust"). Therefore, BofA should have been named as the defendant and served with process. *See Mason v. Snider*, 425 S.W.2d 377, 378 (Tex. App.—Tyler 1968, writ dism'd) ("It seems well settled in this State that one who seeks to cancel a deed must have all parties to the deed made parties in the suit before relief can be granted."). Because BofA was neither named as a defendant nor served with process, it was not subject to the trial court's jurisdiction in the 2009 Lawsuit. *See In re P. RJ E.*, 499 S.W.3d 571, 574 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("Personal jurisdiction over a defendant requires valid service of process.").

These facts formed, in part, the basis for U.S. Bank's claim to a bill of review. Its summary judgment argued that Khyber "sued the wrong entity to invalidate the Deed of Trust" and "sued an entity with no interest in the Property," and that "MERS was not the correct party to sue and serve." When the trial court granted U.S. Bank's

18

motion for summary judgment, it did not specify its grounds for doing so. Therefore, we "must affirm summary judgment if any of the summary judgment grounds are meritorious." *FM Props. Operating Co.*, 22 S.W.3d at 873. And as Khyber concedes in its brief, it is required to "negate all grounds [for the summary judgment] on appeal." *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

Khyber did not meet this requirement. Khyber's briefing does not dispute that it failed to name BofA as a defendant in the 2009 Lawsuit, nor does it contend it served BofA with process. Instead, Khyber spends most of its opening and reply briefs arguing that its service on MERS was effective. But because MERS had no interest in the Deed of Trust at the time Khyber commenced the 2009 Lawsuit, whether MERS was properly served is irrelevant. The only question is whether BofA was properly served, *see Mason*, 425 S.W.2d at 378, and Khyber does not contend that it was. To the contrary, Khyber concedes that "a complete lack of service" would require us "to set aside a default judgment," and here the record establishes a "complete lack of service" on BofA. Therefore, we must affirm the trial court's summary judgment. *See FM Props. Operating Co.*, 22 S.W.3d at 873.

We overrule Khyber's fourth, fifth, and sixth issues.

19

**III.    The Trial Court Did Not Err in Denying Khyber's Motions to Continue the Summary Judgment Hearing and to Compel Discovery from MERS.**

Khyber next contends it was denied the opportunity to make a meaningful response to U.S. Bank's summary judgment motions, because of a lack of both time and information. In its second and third issues, Khyber contends the trial court abused its discretion by denying Khyber's motions to compel MERS to respond to its subpoenas and to continue the summary judgment hearing. Because these issues are related—Khyber sought the continuance in large part so that it could obtain discovery from MERS—we discuss them together.

**A.    Standard of Review.**

"We follow the usual standard of review, abuse of discretion, for the denial of a continuance motion." *In re T.T.*, 39 S.W.3d 355, 361 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (citing *Gen. Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997) (orig. proceeding)). Likewise, "[w]e review a trial court's ruling on discovery requests for abuse of discretion." *Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 643 (Tex. App.—Houston [1st Dist.] 2002, no pet.). A trial court abuses its discretion when it makes a decision "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 162 (Tex. 2004). "There is no abuse of discretion in a case in which the trial court could reasonably conclude that additional discovery was unnecessary and irrelevant to the

legal issues in the case." *Klumb v. Hous. Mun. Emp. Pen. Sys.*, 405 S.W.3d 204, 227 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 458 S.W.3d 1 (Tex. 2015).

**B.    The Trial Court Did Not Abuse Its Discretion by Denying Khyber's Motions to Compel and Continue.**

This is a case in which "the trial court could reasonably conclude that additional discovery was unnecessary and irrelevant to the legal issues in the case." *Id.* Although the scope of discovery is broad, it is not unlimited. Litigants are not entitled to conduct discovery on matters unrelated to the subject matter of the dispute. *See* TEX. R. CIV. P. 192.3(a) ("In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action . . . ."). "Thus, discovery requests must be 'reasonably tailored' to include only relevant matters." *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003). Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." TEX. R. EVID. 401. Put differently, discovery requests must show "a reasonable expectation of obtaining information that will aid the dispute's resolution." *In re CSX*, 124 S.W.3d at 152.

The discovery Khyber sought does not meet these standards. Khyber claims it needed discovery from MERS for two reasons. The first was "to accurately determine whether actual notice [of the 2009 Lawsuit] was received via service at the Florida address [of MERS's regional office]." But as we explained above, MERS

21

had no interest in the Deed of Trust when Khyber filed the 2009 Lawsuit. Like anyone else with no interest in the Deed of Trust or the Property, whether MERS was effectively served is immaterial. Even if Khyber were to prove proper service on MERS, through its regional office or otherwise, that showing would not change the outcome here. The only question is whether BofA was properly served, and it is undisputed that it was not. Conducting discovery on whether MERS was properly served would be "of no consequence in determining the action," and thus it is irrelevant. *See* TEX. R. EVID. 401.

Khyber's second reason for seeking discovery from MERS was to explore "MERS' then existing relationship with [BofA]." Khyber's desire to have this information appears to assume that MERS was BofA's agent when it filed the 2009 Lawsuit, such that proper service upon MERS would be imputed to BofA. This agency theory, in turn, arises out of language in the Deed of Trust, which names MERS as its beneficiary "solely as nominee for Lender and Lender's successors and assigns." According to Khyber, because of this "successors and assigns" language, when MERS assigned the Deed of Trust to BofA, MERS remained the "nominee," or agent, for BofA, capable of accepting service of the 2009 Lawsuit on BofA's behalf.

Before turning to the reasons why Khyber's agency theory does not entitle it to additional discovery, some background on MERS may be useful. MERS is "an

22

electronic mortgage registration system and clearinghouse that tracks beneficial ownership interests in, and servicing rights to, mortgage loans." *In re: Mortg. Elec. Registration Sys. (MERS) Litig.*, 659 F. Supp. 2d 1368, 1370 (U.S. Jud. Pan. Mult. Lit. 2009). It was "designed to avoid the need to record multiple transfers of the deed by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011). MERS is intended to work like this:

> When a home is purchased, the lender obtains from the borrower a promissory note and a mortgage instrument naming MERS as the mortgagee (as nominee for the lender and its successors and assigns). In the mortgage, the borrower assigns his right, title, and interest in the property to MERS, and the mortgage instrument is then recorded in the local land records with MERS as the named mortgagee. When the promissory note is sold (and possibly re-sold) in the secondary mortgage market, the MERS database tracks that transfer. As long as the parties involved in the sale are MERS members, MERS remains the mortgagee of record (thereby avoiding recording and other transfer fees that are otherwise associated with the sale) and continues to act as an agent for the new owner of the promissory note.

*In re: MERS Litig.*, 659 F. Supp. 2d at 1370 n.6.

In other words, "[i]f the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to hold the deed on the new lender's behalf." *Cox v. Bank of Am. Corp., N.A.*, No. SA-11-CA-986-FB, 2012 WL

13136118, at *3 n.3 (W.D. Tex. Mar. 22, 2012). But "[i]f the beneficial interest in the loan is sold to a non-MERS member, the transfer of the deed from MERS to the new lender is recorded in county records and the loan is no longer tracked in the MERS system." *Id*.

The record shows that the latter scenario happened here. In March 2009, almost two months before Khyber filed the 2009 Lawsuit, MERS transferred "[a]ll beneficial interest under [the Deed of Trust]" to BofA, "[t]ogether with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under this [Deed of Trust.]" This language transferred all of MERS's rights in the Deed of Trust to BofA, such that MERS no longer held an interest in it. *See, e.g.*, *Farkas v. Mortg. Elec. Registration Sys., Inc.*, No. 11-12-00024-CV, 2014 WL 97293, at *3 (Tex. App.—Eastland Jan. 9, 2014, pet. denied) (mem. op.) ("According to the terms of the deed of trust, MERS was the beneficiary and the nominee for the lender (Jefferson Mortgage Services) and its successors and assignees. . . . When MERS executed the assignment to Wells Fargo Bank, N.A. on December 1, 2009, Wells Fargo obtained all of MERS's rights and interest in the deed of trust (originating from the lender, Jefferson Mortgage Services)."); *Bierwirth v. BAC Home Loans Serv., L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *4 (Tex. App.—Austin Aug. 30, 2012, no pet.) (mem. op.) (same); *Suniverse, LLC v. Universal Am. Mortg. Co., LLC*, No. 09-19-00090-CV, 2021 WL

24

632603, at *11 (Tex. App.—Beaumont Feb. 18, 2021, pet. denied) (mem. op.) ("When MERS executed the 2010 Assignment to US Bank, US Bank obtained all of MERS's rights and interests in the deed of trust."); *see also Casterline v. OneWest Bank, F.S.B.*, 537 Fed. Appx. 314, 317 (5th Cir. 2013) ("MERS had the authority to transfer the Security Instrument together with the power to foreclose to another party, including OneWest.").

Nor is there anything in the Deed of Trust, or elsewhere in record, to suggest MERS continued to act as a "nominee" for BofA, or that MERS had any ability to act on BofA's behalf. To the contrary, the Deed of Trust states that its beneficiary was MERS and "the successors and assigns of MERS." The record shows that MERS transferred its entire interest in the Deed of Trust to BofA before Khyber filed the 2009 Lawsuit, after which it stopped acting as BofA's agent. And as a result, MERS had no authority or ability to accept service of process of the 2009 Lawsuit on BofA's behalf. *Cf. Turbo Rests., LLC v. Reid's Refrigeration, Inc.*, 657 S.W.3d 490, 495 (Tex. App.—El Paso 2022, no pet.) ("And when a plaintiff attempts service on a defendant corporation, the plaintiff must ensure that the record shows that the person who accepted delivery was in fact the corporation's registered agent or was otherwise authorized to accept service on the corporation's behalf.").

That MERS was not BofA's agent means Khyber's request for discovery on the agency relationship between BofA and MERS, and whether "whether MERS

25

notified [BofA] of the 2009 Lawsuit," seeks irrelevant information. Because MERS was not BofA's agent, proving valid service on MERS would not establish valid service on BofA. *See id.* And even if Khyber were to prove that MERS notified BofA of the 2009 Lawsuit and that BofA had actual notice of it, that showing would be of no consequence. "A party who becomes aware of the proceedings without proper service of process has no duty to participate in them." *Caldwell*, 154 S.W.3d at 97 n.1; *see also Wilson v. Dunn*, 800 S.W.2d 833, 837 (Tex. 1990) ("[M]ere knowledge of a pending suit does not place any duty on a defendant to act."). Therefore, Khyber's subpoena to MERS sought irrelevant information of no "consequence in determining the action," TEX. R. EVID. 401(b), and the trial court properly denied Khyber's motions to compel and for a continuance. We overrule Khyber's second and third issues.

## IV. The Trial Court Did Not Err by Granting Summary Judgment in U.S. Bank's Favor on Khyber's Counterclaims.

Khyber's seventh issue claims the trial court erred when it granted summary judgment to U.S. Bank on Khyber's two counterclaims. The first of Khyber's counterclaims sought to quiet title to the Property in itself; the other sought a judgment declaring U.S. Bank's Deed of Trust void. Both were based on the argument that the four-year limitations period applicable to U.S. Bank's right to foreclose on the Property had expired, thus invalidating U.S. Bank's lien and the Deed of Trust. *See* TEX. CIV. PRAC. & REM. CODE § 16.035(d) ("On the expiration

26

of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void.").

**A.     The Four-Year Limitations Period on Foreclosures.**

A secured lender must bring suit to foreclose on a real property lien "not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.035(a). The accrual date is generally the maturity date of the note, not the date of a borrower's default. *See id.* § 16.035(e). But if, as here, the security instrument contains an optional acceleration clause, the cause of action accrues when the lender exercises its option to accelerate the maturity date of the note. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). Effective acceleration requires both notice of intent to accelerate and notice of acceleration, and both notices must be clear and unequivocal. *Id.*

But after it accelerates, the lender can abandon acceleration, and if it does so the abandonment "'has the effect of restoring the contract to its original condition,' thereby 'restoring the note's original maturity date' for the purposes of accrual." *Boren v. U.S. Bank Nat'l Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015) (quoting *Khan v. GBAK Props.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.)). The lender's abandonment of acceleration, in other words, restores the original accrual date for the limitations period. *See Holy Cross*, 44 S.W.3d at 566.

An abandonment can be effected by agreement between the lender and borrower, or by the lender's unilateral conduct showing an intent to abandon the acceleration. *See id.*; *see also G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015) ("Waiver . . . can occur either expressly, through a clear repudiation of the right, or impliedly, through conduct inconsistent with a claim to the right."). Texas courts thus analyze the issue of abandonment by conduct under traditional waiver principles. *See, e.g.*, *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. App.—Tyler 1974, no writ) (note holder may "waive the exercise of the option" to accelerate note after it "already exercised its option"); *see also Khan*, 371 S.W.3d at 354 n.1 (explaining that "the case law simultaneously refers to both waiver and abandonment," while the Texas Supreme Court recently adopted terminology "abandonment of acceleration").

The elements of waiver include: (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Whether a waiver occurred is "ordinarily a question of fact, but when the facts are admitted or clearly established, it becomes a question of law." *In re Liberty Ins.*, 496 S.W.3d 229, 223 (Tex. App.—Houston [1st Dist.] 2016) (orig. proceeding).

**B.    The Limitations Period on U.S. Bank's Ability to Foreclose Has Not Expired Because Its Predecessor Abandoned Acceleration.**

The parties do not dispute that BofA accelerated the loan secured by the Deed of Trust in March 2009, when BofA applied to foreclose on the Property after default by the original borrowers, the Rhoadses. *See* TEX. R. CIV. P. 736. Nor do they disagree that BofA's foreclosure application started the running of the limitations period. And there is no dispute that BofA nonsuited its foreclosure application a few months later, in June 2019.

They part ways, however, on the effect of the nonsuit. U.S. Bank contends the nonsuit was an abandonment of the loan's acceleration. Khyber claims the contrary. If Khyber is correct, and the nonsuit did not effect an abandonment, then the statute of limitations continued to run and expired four years after BofA filed its foreclosure application, in June 2013. *See* TEX. CIV. PRAC. & REM. CODE § 16.035(a). But if U.S. Bank's position is correct, the nonsuit worked an abandonment of acceleration, thus resetting the accrual date for a foreclosure claim. *See Khan*, 371 S.W.3d at 353. The question before us, then, is whether BofA's nonsuit of its foreclosure application was an abandonment of its acceleration of the note.

We conclude that, under these facts, it was an abandonment. The weight of authority holds that a lender's voluntary nonsuit of its foreclosure application abandons acceleration because it reflects the lender's intent to abandon. *See, e.g.*, *Denbina*, 516 S.W.2d at 463 ("[T]he City had a right to withdraw or revoke its option

29

to accelerate payment, and effectively expressed its intent to do so by taking a non-suit"); *see also Smither v. Ditech Fin., L.L.C.*, 681 Fed. Appx. 347, 353 (5th Cir. 2017) ("One way in which Texas courts have recognized that a noteholder may evince its intent to waive its prior acceleration is by voluntarily nonsuiting an action to collect on the note or to foreclose on the lien securing the note."); *Wells Fargo Bank v. Mata*, No. A-14-CA-00909-SS, 2016 WL 7616627, at *4 (W.D. Tex. Oct. 12, 2016) ("In this case, the first acceleration of Defendants' debt occurred on May 11, 2009, but was abandoned on February 10, 2010, when Plaintiff filed its motion for nonsuit in the First Foreclosure Action."); *Costello v. U.S. Bank Tr., N.A.*, No. CV H-16-702, 2016 WL 5871459, at *4 (S.D. Tex. Oct. 7, 2016) ("Acceleration can be abandoned by . . . a creditor's voluntary dismissal of its claims against a debtor."). One federal court, applying Texas law, recognized that "given the number of courts that have explicitly held that when a lender non-suits a foreclosure action it abandons acceleration, the Court finds those cases persuasive here." *Hargrave v. PennyMac Corp.*, No. 3:16-CV-3487B, 2018 WL 1806522, at *3 (N.D. Tex. Apr. 17, 2018).

While some Texas cases have held that a creditor's nonsuit of a foreclosure action cannot by itself effect an abandonment of acceleration, those cases have reached that conclusion when the creditor's nonsuit was driven by a procedural *requirement* rather than the creditor's voluntary choice. *See, e.g., Burney v. Citigroup Glob. Mkts. Realty Corp.*, 244 S.W.3d 900, 903 (Tex. App.—Dallas 2008,

30

no pet.) (involuntary dismissal of creditor's foreclosure application for want of prosecution effected abandonment); *Thompson v. Chrysler First Bus. Credit Corp.*, 840 S.W.2d 25, 30–31 (Tex. App.—Dallas 1992, no writ) (bankruptcy stay preventing foreclosure did not constitute abandonment of acceleration). "Read together, these cases suggest there is a difference between intentional litigation conduct that evidences a lender's intent to abandon acceleration of the debt, and mere litigation procedure that does not commit the lender to abandonment of acceleration." *Deutsche Bank Nat'l Tr. Co. v. Ketmayura*, No. A-14-CV-00931-LY-ML, 2015 WL 3899050, at *6 (W.D. Tex. June 11, 2015).

BofA's nonsuit of its March 2009 foreclosure application was "intentional litigation conduct that evidence[d] [its] intent to abandon acceleration of the debt." *Id*. There was no procedural requirement forcing BofA to nonsuit, nothing in the record suggests BofA took that step for any reason other than its own volition, and Khyber points to no evidence indicating otherwise. Indeed, BofA's notice of nonsuit states expressly that it "no longer desires to prosecute this action," and BofA filed the nonsuit before the Rhoadses had appeared or answered. Therefore, BofA's nonsuit of its foreclosure application reflects its intent to voluntarily abandon acceleration, such that the nonsuit effected an abandonment and reset the accrual date for a foreclosure action. *See Denbina*, 516 S.W.2d at 463.

Khyber asserts that nonsuit of a foreclosure application "does not, by itself, conclusively establish abandonment as a matter of law." And we agree that nonsuit alone cannot establish abandonment. But where the record also shows the nonsuit was filed voluntarily, at the creditor's election rather than because of a procedural requirement or other circumstance effectively requiring nonsuit, then the creditor's nonsuit of its foreclosure action can reflect its intent to abandon acceleration, and thus effect an abandonment. *See id.* That condition is satisfied here.

Khyber also relies on *Powell v. CIT Bank, N.A.*, No. 14-15-00949-CV, 2017 WL 4228893 (Tex. App.—Houston [14th Dist.] June 8, 2017, no pet.) (mem. op.), to support its contrary contention. But *Powell* is inapplicable because it was not an abandonment of acceleration case.

Instead, *Powell* arose out of a reverse mortgage transaction in which the full amount of the debt became due on the borrower's death. *See id.* at *3 ("Under the unambiguous language of the non-recourse, reverse-mortgage Note, no payments are due until an event described in section 7 occurs, and when such an event occurs, all outstanding principle, accrued interest, and other charges become immediately due and payable. Thus, the Note does not provide for installment payments whose maturity date may be accelerated."). Therefore, *Powell* rejected the lender's contention that it had abandoned acceleration by nonsuiting its foreclosure action, because there was no acceleration to abandon: "Because neither CIT Bank nor its

predecessors accelerated the Note, none of these entities could abandon an acceleration of the Note. . . . Therefore, the trial evidence proved as a matter of law that neither CIT Bank nor its predecessors could have avoided the bar of the statute of limitations by abandoning the acceleration of the Note." *Id*. at *4 (citation omitted). Considering this holding, *Powell* has no bearing here.

We conclude that BofA's 2009 nonsuit of its foreclosure application reflected its voluntary choice to abandon acceleration and thus effected an abandonment. We overrule Khyber's seventh issue.

## Conclusion

We affirm the trial court's judgment.


Sarah Beth Landau
Justice

Panel consists of Justices Kelly, Landau, and Rivas-Molloy.